Appeal of **EWING-THOMAS CON-**        Docket No. 135.
**VERTING CO.**

> A taxpayer obligated under firm sales contracts at the end of 1919 to sell merchandise for less than the then market price may not inventory merchandise on hand at the close of the year of a quality suitable for manufacture to fill its contracts, but not specifically appropriated to such contracts, at less than cost.

Submitted November 3, 1924; decided December 1, 1924.

*J. C. Peacock, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, and SMITH.

### FINDINGS OF FACT.

(1) The taxpayer is a Pennsylvania corporation with its principal office at Chester, Pa. It is engaged in the business of mercerizing cotton yarn. It buys from southern spinners cotton yarn in the warped form known in the trade as natural or gray yarn. It mercerizes this yarn and then winds it, placing it on cones, and sells its output to the knitting trade for use in making stockings.

(2) It was the regular and constant practice of the taxpayer during the year 1919, and for many months prior thereto, in every case of the sale of yarn, if it did not have sufficient yarn on hand to fill the order sold, immediately to cover the contract by purchasing natural yarn necessary to take care of the sale.

(3) Between September 25, 1918, and May 25, 1919, the taxpayer in the ordinary course of its business entered into a number of contracts for the sale of mercerized yarn to one Clarence L. Meyers, of Philadelphia, Pa., all of which yarn should have been delivered to Meyers in the ordinary course of business by the middle of 1919. Deliveries were not made, however, in accordance with the understanding of both parties and some of the yarn owed Meyers was not delivered until after December 31, 1919.

(4) The taxpayer accepted orders from and sold mercerized yarn to many persons besides Clarence L. Meyers, of Philadelphia. Its transactions with Meyers during 1919 were from 10 to 15 per cent of its entire transactions.

(5) During the period from February, 1919, to April, 1920, prices of cotton yarn both natural and mercerized advanced very greatly. Certain kinds of yarn doubled and trebled in price during the period.

(6) Some of the natural yarn which had been purchased against the Meyers contracts was used in filling orders received from others than Meyers at later dates.

(7) On December 31, 1919, the close of the taxpayer's taxable year, the taxpayer was under binding contracts to sell Clarence L. Meyers 53,198 pounds of mercerized yarn at prices much under the then market prices. On that date the taxpayer had on hand approximately 40,000 pounds of yarn of a quality and grade suitable for filling the Meyers contracts. None of this yarn was, however, spe-

cifically set aside for the filling of those contracts and the taxpayer was free to do with it as he wished. The taxpayer's inventory at the close of 1919 was taken upon the basis of cost. Inasmuch, however, as the taxpayer was obligated to sell to Meyers 53,198 pounds of mercerized yarn at less than the then market prices and at less than the cost of the approximately 40,000 pounds of yarn on hand available for filling the contracts, the inventory of all yarn on hand at December 31, 1919, was written down to the extent of $53,198, which amount represents the estimated loss which the taxpayer was of the opinion that it had sustained upon the Meyers contracts.

(8) To take care of its estimated loss of $53,198, the taxpayer opened a special account known as the " C. L. Meyers Special Account " and charged off this estimated amount as a loss and made a counter-entry in its profits and loss ledger. The income-tax return form for 1919 did not contain any provision for the entry of such an item as a deduction and the taxpayer accordingly reported its inventory as reduced by $53,198.

(9) The Meyers contracts were completed by deliveries commencing January 2, 1920, and ending on May 20, 1920. Most but not all of the 40,000 pounds of yarn on hand at December 31, 1919, suitable for filling the Meyers contracts was used in the making of these deliveries; some natural yarn was purchased after December 31, 1919, and used in making the deliveries.

(10) The Commissioner has added to the taxpayer's net income reported for 1919 the $53,198 in question and has proposed the assessment of an additional tax of $28,242.66 for said year.

## DECISION.

The determination of the Commissioner is approved.

## OPINION.

SMITH: The question in issue in this case is whether a taxpayer may take its inventory at the close of 1919 at less than cost and at less than market prices where it is under binding firm sales contracts to sell an equivalent amount of merchandise at prices less than the cost and less than the market prices at the close of the year.

The facts in the instant case show that the taxpayer at December 31, 1919, was under binding contracts to deliver to one Clarence L. Meyers, Philadelphia, Pa., 53,198 pounds of mercerized yarn at stipulated prices. The contracts to make the deliveries had been entered into during the latter part of 1918 or the first half of 1919, at which time market prices of mercerized yarn were much lower than they were at the close of the year 1919. As soon as the taxpayer had entered into contracts to sell the mercerized yarn it immediately went into the market and bought natural or gray yarn against those contracts. A large part of the natural yarn which had been purchased against the Meyers contracts was mercerized and delivered to customers who had placed orders with the taxpayer after the Meyers contracts had been entered into.

Inasmuch as the taxpayer was not obligated to deliver to Meyers any particular lot of yarn which it had purchased it was free to sell the yarn to later customers and since the prices of mercerized

yarn advanced very rapidly throughout most of 1919 the amount of book profit shown upon the deliveries of mercerized yarn to other individuals than Meyers was very large. The evidence shows that the taxpayer had in no case speculated in cotton yarn. It was simply its endeavor to make a fair manufacturer's profit upon the mercerizing of the yarn. From its point of view the natural yarn which had been purchased against the Meyers contracts but which was used in filling later orders was substituted by the purchases made against the later orders at the time those orders were taken. The taxpayer's inventory at December 31, 1919, was taken at cost. But the taxpayer appreciated that it was under a very heavy liability to Meyers and that it would in all probability sustain a very large loss upon the deliveries which would be made during the year 1920 upon the Meyers contracts. It therefore cut down its inventory to account for the loss which it was clearly of the opinion it must sustain.

Section 203 of the Revenue Act of 1918 provides:

That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

In pursuance of the authority thus conferred upon the Commissioner, Article 1584 of Regulations 45 (1920 edition) has been prescribed. This article provides in part:

* * * Under ordinary circumstances, "market" means current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which ordinarily purchased by the taxpayer, and is applicable in the cases (a) of goods purchased and on hand, and (b) of basic elements of cost (materials, labor, and burden) in goods in process of manufacture and in finished goods on hand; exclusive, however, of goods on hand or in process of manufacture for delivery upon firm sales contracts at fixed prices entered into before the date of the inventory, which goods must be inventoried at cost. * * * Where, owing to abnormal conditions, the taxpayer has regularly sold such merchandise at prices lower than the current bid price as above defined, the inventory may be valued at such prices, and the correctness of such prices will be determined by reference to the actual sales of the taxpayer for a reasonable period before and after the date of the inventory. * * *

It is contended on the part of the taxpayer that its true net income for 1919 can not be determined without the deduction from its gross income of the $53,198, estimated loss upon the Meyers contracts. Relative to this contention no evidence has been furnished that the yarn which the taxpayer had on hand at December 31, 1919, was not worth the cost or market value, whichever was lower. No yarn on hand at the close of 1919 had been specifically appropriated to the Meyers contracts. The taxpayer was not obligated to use any of the yarn which was inventoried in filling those contracts. So far as anything appears in the record the yarn could have been sold in the open market at the prices at which it was inventoried. It is true that the taxpayer was under contract to deliver cotton yarn to Meyers and undoubtedly it would have been liable to damages if the deliveries had not ultimately been made. But, if so, such damages would have been sustained in the year in which any judgment might be given against the taxpayer or in which such

judgment was paid. The amount of loss which the taxpayer might have sustained is only conjectural. No loss was actually sustained during the year 1919 and there is no provision of the law which permits the deduction of a prospective loss.