IDEAL REVERSIBLE HINGE CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 6327.   Promulgated August 9, 1927.

" Market price " inventory prepared by petitioner and approved
by the Commissioner accepted in lieu of " fair value " inventory
contended for by petitioner.

*Sterling P. King, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

This proceeding involves a proposed deficiency for the calendar
year 1920 in the amount of $7,766.08. The question involved con-
cerns the value of merchandise inventory.

### FINDINGS OF FACT.

The petitioner is a Missouri corporation with its office and place of
business in St. Louis.

During 1920 and for several years prior thereto, petitioner was
engaged in the manufacture of various designs of phonographs for
jobbers, the particular design depending upon the desire of the par-
ticular jobber for whom the article was being manufactured.

On December 31, 1920, petitioner had on hand completed and
partly finished phonographs, and in addition, motors, tone arms,
hardware, lumber, parts of dismantled machines, such as legs, panels,
etc., and various other items of material which would enter into the
finished product.

In the latter part of 1920, there was a slump in petitioner's business
to the extent that while it had average sales for the eleven months
preceding December, 1920, of approximately $8,000 per month, its
sales for December, 1920, amounted to only $938.16, and for the
period from January 1, 1921, to April 15, 1921, amounted to $133.27.
This was accompanied by a great reduction in the price at which
phonographs were selling on the market.

The phonographs which the petitioner had on hand, both com-
pleted and in process, at December 31, 1920, were manufactured under
a contract with the Shapleigh Hardware Co., dated May 31, 1920, for
3,000 machines, which called for delivery as fast as completed. At
December 31, 1920, 1,600 machines under this order had not been
delivered. No machines were accepted by the Shapleigh Hardware
Co. from December, 1920, until May, 1921, when machines were ac-
cepted under the aforementioned contract. The motors which were
on hand at December 31, 1920, had been supplied to the petitioner by
the Shapleigh Hardware Co., and those which were not used were
ultimately accepted back by the Shapleigh Hardware Co. at the
prices at which they were billed to the petitioner.

When the petitioner took its inventory at December 31, 1920, it set up three amounts as follows: cost, $37,342.81, market price, $27,864.39 and fair value, $9,820.55. Petitioner used the cost inventory in preparing its income and profits-tax return for 1920, and the market-price inventory in preparing its state income-tax return. After an examination by a revenue agent, the Commissioner accepted the market-price inventory as representing the fair market value of the inventory at December 31, 1920, i. e., allowed this as showing an inventory based on cost or market, whichever was lower. Petitioner contends in this proceeding that the fair-value inventory of $9,820.55 should be used. The fair value was arrived at on the basis of what the petitioner thought the various articles would sell for, a percentage reduction of from 50 to 100 per cent being used.

### OPINION.

LITTLETON: The question at issue in this case is the market price of petitioner's inventory at December 31, 1920, no question being raised as to the applicability of the "cost or market, whichever is lower" basis, or that market was lower than cost at December 31, 1920.

The evidence is not clear as to the method pursued by the petitioner in arriving at the valuation for its inventory, though it was shown that the market-price inventory, which was prepared by the petitioner and accepted by the Commissioner, was prepared on the basis of what the petitioner considered it could replace the various items for by purchasing them in the market. The fair-value inventory for which the petitioner now contends, was based on what it considered could be realized on a sale of the finished articles and material on hand. The reductions from cost to fair value seem to have been made in an arbitrary manner. For example, typical notations on the inventory sheet are that a certain group of items could not be sold for 50 cents on the dollar, and a reduction was then made of one-half to arrive at a fair value.

The Board is not convinced that the fair-value inventory, as claimed by the petitioner, represents an inventory taken on the basis of cost or market, whichever is lower. Doubtless, there was a great slump in petitioner's business at or near the close of 1920, but this of itself would not authorize the determining of market without regard to the price at which items in an inventory were selling on the open market. "Market value" has been interpreted by the courts on various occasions. *Sanford* v. *Peck*, 63 Conn. 486; 27 Atl. 1057, contains the following definition:

The expressions "actual value," "market value," or "market price," when applied to any article, mean the same thing; they mean the price or value of

the article established or shown by sales, public or private, in the way of ordinary business.

Likewise, *Barrett* v. *The Wacousta*, 2 Fed. Cas. 928:

> To make a market price there must be buying and selling, purchase and sale. The price of gold on 'change is fixed by sales made. A price cannot be established by a mere offer to sell, or an offer to purchase. Sales must be consummated by agreement to make a market price. The minds of the buyer and seller must unite on a price.

The further consideration exists that the completed phonographs which petitioner had on hand, as well as those which were partly finished, were manufactured under a contract for their sale at a fixed price. Eventually, at least some of these machines were accepted under the contract, and the motors which had been billed to the petitioner by the Shapleigh Hardware Co. for use on machines being manufactured for this company were accepted back by the company at the same price as billed to the petitioner. The question might well arise here whether any valuation other than cost could be used where the petitioner is protected against a change in market prices by existing contracts at an inventory date, *Ewing-Thomas Converting Co.*, 1 B. T. A. 121.

On a consideration of the entire evidence, however, the Board is of the opinion that when the petitioner prepared an inventory on the basis of replacement cost of the items in its inventory, this more nearly represents a market value for its inventory than that which we are now being asked to accept as the fair value of its inventory.

*Judgment will be entered for the respondent.*

Considered by SMITH.