ABBEVILLE COTTON MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11903.   Promulgated February 10, 1928.

*John W. Price, Esq.,* and *Fred Van Dolsen, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

OPINION.

LITTLETON: The only question at issue in this case is the valuation of petitioner's inventory of raw cotton, goods in process, and finished goods. No question is raised as to the cost to the petitioner of the material and goods in question, the parties apparently being agreed that with the rapidly declining market which prevailed during the last three months of the fiscal year in question, market was lower than cost. The parties have stipulated the unit manufacturing cost, the percentage of waste and poundage of cotton in each of the three classes of inventory items. The only remaining factor necessary to a valuation of the inventory is the market value of cotton at September 30, 1920.

The petitioner contends in its petition that its " inventories of finished goods and goods in process on hand at September 30, 1920, should be valued on the basis of not more than 20 cent cotton " and that " its inventories of raw cotton on hand at September 30, 1920, should be valued at not more than 22 cents per pound," whereas the respondent used 26.7123 cents as the market price for cotton at September 30, 1920, which market price was applied to the three classes of inventory items. In a brief submitted after the hearing, petitioner asks for a further reduction in the market price of cotton from 20 cents to 18 cents, in so far as applicable to the goods in process and finished goods.

The basis upon which the respondent determined his " market " is the average price paid by the petitioner for 30 bales of cotton on September 30, 1920. We are of the opinion that this can not be accepted as determinative of " market " to the petitioner, since these quantities were small as compared with the amounts ordinarily purchased by the petitioner, and also since the cotton represented by such purchases was of much higher grade than the average grade bought and used. Petitioner does not buy one grade of cotton which can be used to produce its product, but obtains the grade or mixture that it desires by mixing relatively high and low grades of cotton. Since the purchases used by the respondent were of much higher grade than that which is representative of the cotton on hand and used by the petitioner, the market price used by the respondent can not be sustained.

We are not convinced that the evidence justifies the conclusion that the market value of petitioner's goods in process and finished goods should be valued on the basis of using a lower price per pound for raw cotton than the prevailing market at the inventory date. Much evidence was presented for the purpose of showing that the market for petitioner's finished product was less than that which would be represented by the replacement cost at the inventory date

in question; that is, petitioner sought to show that the sale price of the entire amount of finished goods on hand was less than raw material and manufacturing costs necessary to produce these goods. While conditions may exist on a declining market which would justify fixing the market value of an inventory of finished goods for a manufacturing concern at what these goods could be sold for, rather than what it would cost to manufacture them, a finding to that effect can not be made in this case on the evidence presented. Most of the evidence presented as to the sale price of petitioner's finished goods was of a speculative nature, and not such as could be used to show the market for such goods on this date. Doubtless, the market at this time was in a state of rapid decline due to the unusual conditions then prevailing, but the evidence is not conclusive that by September 30, 1920, it had reached the low peak for which the petitioner contends. One of the expert witnesses who testified apparently had in mind market conditions at the time the returns were prepared about December of the same year and the other expert witness testified as to what in his judgment he might have paid for 3,700,000 yards (or approximately the entire inventory) at September 30, 1920. The testimony in both cases, as well as other evidence presented, shows little more than a rapidly declining market and the difficulty which would have been encountered in attempting to dispose of the entire quantity of goods on hand, but a market fixed on the basis thereof would be little short of a guess, or speculation.

It is noted further, that during the month of September, 1920, petitioner's sales amounted to 370,000 yards, or approximately one-tenth of its entire inventory. No evidence was offered as to the price at which these sales were made, or the condition under which the goods were sold. Actual sales and bid and quoted prices at or near the inventory date would be more helpful than evidence of the character upon which we are asked to predicate a market. Since the evidence with respect to the market prevailing for raw cotton on September 30, 1920, is definite in its nature as opposed to the general and speculative nature of the evidence for the finished goods, the Board is of the opinion that a proper valuation at market can be obtained by the determination of a replacement cost for the entire inventory, that is, "market" in the sense of what it would have cost the petitioner to have bought raw cotton on September 30, 1920, and to have manufactured the product which it had on hand on this date.

To arrive at a replacement cost for the entire inventory only one factor remains for determination, namely, market value of raw cotton, the parties having agreed upon unit manufacturing cost, percentage of waste and total poundage in the three inventory items.

A consideration of the entire evidence leads to the conclusion that the price of 22 cents as used by the petitioner in valuing its entire inventory is fair and reasonable and should be sustained. This takes into consideration not only the market prevailing on this date for the relatively high percentage of low-grade cotton in the raw cotton inventory and the average grade of cotton used in the petitioner's manufacturing process, but also other factors affecting the market value of the entire inventory.

*Judgment will be entered on 10 days' notice, under Rule 50.*