MUTUAL CHEMICAL COMPANY OF AMERICA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10083.    Promulgated June 13, 1928.

*Charles H. Cowenhoven, Esq.*, for the petitioner.
*Alva C. Baird, Esq.*, for the respondent.

OPINION.

MORRIS: The petitioner's counsel has conceded the correctness of the respondent's action in reducing invested capital for the years 1917 and 1918 by an amount of income and profits taxes for prior years. Therefore, we shall address ourselves to the second and third allegations of error set forth herein.

The second allegation of error alleged to have been committed is the failure of the respondent to allow as a deduction, in the computation of net income for the year 1918, an inventory adjustment of $406,838.32. At the hearing of this proceeding the petitioner conceded the correctness of the respondent's adjustment with respect to goods in process amounting to $53,718.55 and finished goods on hand amounting to $51,101.59. The amount of the inventory adjustment here in dispute is, therefore, $302,018.18 instead of $406,838.32, as pleaded.

Section 203 of the Revenue Act of 1918 provides:

That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Pursuant to the authority vested in the respondent by section 203, *supra*, Regulations 45 was promulgated. Article 1584 thereof, as amended by T. D. 3296, provides in part as follows:

Under ordinary circumstances, and for normal goods in an inventory, "market" means the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which usually purchased by the taxpayer, and is applicable in the cases (*a*) of goods purchased and on hand, and (*b*) of basic elements of cost (materials, labor and burden) in goods in process of manufacture and in finished goods on hand; exclusive, however, of goods on hand or in process of manufacture for delivery upon firm sales contracts (i. e., those not legally subject to cancellation by either party) at fixed prices entered into before the date of the inventory, which goods must be inventoried at cost. * * *

The question presented reduces itself to whether the foregoing article of the regulations is applicable to raw materials on hand when, as in the instant case, the petitioner has contracted for future delivery of finished products, but neither the raw materials nor finished products have been allocated or apportioned to any particular contracts.

The petitioner's counsel contends that as a matter of law the term "goods on hand" as used in the regulations does not include raw materials and he cites as authority for his contention *Cumpston* v. *Haigh*, 2 Bing. N. C. 449. In our opinion that case is wholly inapplicable to the peculiar facts and circumstances which must be considered in determining the amount of income subject to taxation under the revenue acts. Indeed it is conceivable that the term "goods on hand" may mean any class of goods entering into and becoming a part of an inventory which is used for the purpose of determining profits for a given taxable period. The petitioner's counsel contends further that as a matter of fact the raw materials in question were not held "for delivery upon firm sales contracts" for the reason that the term "for delivery" necessarily implies an allocation of the goods to such contracts, and, furthermore, article 1584, *supra*, does not require any goods to be held at cost in the inventory unless those goods have been sold under a "sales contract." He argues that the sales contracts here under consideration called for *finished products* only, and that since no raw materials were sold by it, either by contract or otherwise, there is no reason why those raw materials should not be reduced to cost or market, whichever is lower.

Section 203 of the Revenue Act of 1918 gives the Commissioner authority to prescribe the basis upon which inventories must be taken, when in his opinion their use is necessary in order clearly to determine the income of the taxpayer. The purpose of the regulations promulgated under that section of the Act of allowing taxpayers to compute inventories on the basis of cost or market, whichever is lower, as distinguished from the cost basis, is to allow an accounting for any reduction in the value of the inventory which has in fact taken place during a taxable year, thereby more clearly

reflecting income. Where the inventories on hand, whether in the form of raw materials, goods in process, or finished goods, are required to fulfill legally enforcible contracts, it is obvious that the taxpayer is protected against any reduction in value occasioned by declining market prices; and to allow a taxpayer, where he is protected by sales contracts at a price in excess of cost or market, to inventory those items at market, would distort his income in that he would show a loss in one year when in fact none was sustained and a greater gain than the true gain in the following year when the sales were executed. The mere fact that the petitioner voluntarily reduced the sales price under contracts held by it in 1918 does not render those contracts any the less firm sales contracts should it choose to enforce the obligations created thereby.

The petitioner relies on *Ewing-Thomas Converting Co.*, 1 B. T. A. 121, to support the proposition that as there had been no allocation of the raw materials to any sales contract such materials may be inventoried at the lower of cost or market. In that case the taxpayer's inventory was taken at cost. The taxpayer sought to value that part of its goods on hand which were required to complete certain firm sales contracts at a price approximating the contract prices, which were lower than either cost or current bid (market) prices at the close of the year, under the provisions of article 1584 of the regulations 45 permitting the taxpayer, who has regularly sold merchandise " at prices lower than the current bid price " to value such merchandise at the lower selling prices. The Board denied the relief sought mainly because of the insufficiency of the evidence, the taxpayer having failed to prove the sale of the merchandise at prices less than " current bid price " or even that the merchandise in question had been definitely allocated to firm sales contracts at prices less than " current bid price." The fact that the merchandise in question had not been allocated to the firm sales contracts was not determinative of the question there at issue; and our decision was not based on the fact that there had not been such an allocation.

Considering the facts and circumstances of this case in the light of the spirit and intent of the law and the regulations promulgated thereunder, we are of the opinion that the action of the respondent should be approved.

The third allegation of error urged by the petitioner is the failure of the respondent to compute its profits taxes under the provisions of section 210 of the Revenue Act of 1917 and sections 327 and 328 of the Revenue Act of 1918. Section 210, *supra*, provides:

That if the Secretary of the Treasury is unable in any case satisfactorily to determine the invested capital, the amount of the deduction shall be the sum of (1) an amount equal to the same proportion of the net income of the trade or business received during the taxable year as the proportion which the

average deduction (determined in the same manner as provided in section two hundred and three, without including the $3,000 or $6,000 therein referred to) for the same calendar year of representative corporations, partnerships, and individuals, engaged in a like or similar trade or business, bears to the total net income of the trade or business received by such corporations, partnerships, and individuals, plus (2) in the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000.

\* \* \* \* \* \* \*

Section 327 *supra*, insofar as applicable to the instant case, provides:

That in the following cases the tax shall be determined as provided in section 328:

(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;

(b) In the case of a foreign corporation;

(c) Where a mixed aggregate of tangible property and intangible property has been paid in for stock or for stock and bonds and the Commissioner is unable satisfactorily to determine the respective values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively.

The undisputed testimony shows that the petitioner when organized in 1908 acquired the assets of three other companies consisting of a mixed aggregate of tangible and intangible property for its entire issue of capital stock of $4,000,000; that the petitioner's officers arbitrarily allocated $1,450,000 to the tangible assets and $2,550,000 to the intangible assets. Therefore, we have only to determine whether the respondent could have satisfactorily determined the respective values of the several classes of property at the time of payment and if we find that he could not, relief under the provisions of section 210 *supra*, and 328 *supra*, should be granted. *Davis & Andrews Co.*, 2 B. T. A. 328. Assuming that the $4,000,000 paid for the assets acquired by the petitioner upon organization represented the correct value of those assets, we are confronted with the further difficulty of establishing the correct values of the two classes of property, viz, tangible and intangible, which were placed upon the books of account at arbitrary figures. This difficulty was recognized in *The Viscose Co.*, 3 B. T. A. 444, wherein it was said:

How is it possible for the Commissioner to determine the respective values of the several classes of tangible and intangible property acquired by the taxpayer in exchange for stock? \* \* \* The book value of the tangible property acquired from the predecessor corporation is the basis or starting point for the Commissioner's computation of invested capital.

The evidence shows that the books and records of some of the corporations entering into the consolidation in 1908 have been lost or destroyed. It is, therefore, impossible to gain from those records knowledge of the financial history and success of those corporations

for the purpose of aiding in the determination of the value of the intangible assets and also for the purpose of learning the values at which the tangible assets were recorded prior to acquisition by the petitioner.

We are satisfied that the respective values of the tangible and intangible assets taken over by the petitioner at the time of the reorganization can not be determined.

We are, therefore, of the opinion that the petitioner is entitled to have its taxes computed under the provisions of section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918.

Reviewed by the Board.

> *Recomputation of the deficiency should be made under Rule 62(c).*

GREEN, dissenting: I am unable to concur in that portion of the prevailing opinion that approves the Commissioner's action as to inventories.

TRUSSELL agrees with the dissent.