Space Controls, Inc. v. Commissioner.
Space Controls, Inc. v. Commissioner
Docket No. 87161.
United States Tax Court
T.C. Memo 1962-54; 1962 Tax Ct. Memo LEXIS 254; 21 T.C.M. (CCH) 295; T.C.M. (RIA) 62054; March 15, 1962
Leland E. Fiske, Esq., for the petitioner. John P. Higgins, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for its fiscal year ended February 28, 1955, in the amount of $44,965.14. The issue for decision is whether petitioner properly reduced its inventory on February 28, 1957, from cost to an amount it states represents market in computing its net operating loss to be carried back to its fiscal year ended February 28, 1955. Another issue raised by the pleadings has been conceded by petitioner. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner, a corporation with offices at Forth Worth, Texas, formerly known as Gremco, Inc., filed its income tax returns under *255 its former name for the fiscal years ended February 28, 1955, 1957, and 1958 with the district director of internal revenue at Dallas, Texas, and its return for the fiscal year ended February 29, 1956, with the district director of internal revenue at Fort Worth, Texas. In the fiscal year ended February 28, 1955, petitioner had taxable income; in the fiscal years ended February 29, 1956, and February 28, 1957 and 1958, it sustained operating losses and had no taxable income. On June 27, 1956, petitioner was awarded a contract with the United States Army Ordance Corps for the construction and delivery of 382 military 3/4-ton cargo trailers, at a unit price of $804.2175 per unit or a total contract price of $307,211.09. This contract was designated by petitioner as Job No. 1120. These trailers were of a special military design and were not suitable for commercial or civilian use. On February 28, 1957, petitioner had completed and shipped 96 units, leaving 286 units yet to be shipped. The 96 units shipped prior to the end of petitioner's fiscal year 1957 were shipped during the period January 16, 1957 through February 26, 1957. The remaining 286 units were shipped during the period *256 from March 1, 1957, through July 31, 1957. Of these 90 were shipped during the month of March 1957, 10 of the 90 being shipped on March 1 and another 10 on March 7, 1957. Based upon the percent of completion, as shown by petitioner's shipping and inventory records, petitioner's accountants determined that at February 28, 1957, the number of equivalent units which had been completed was as follows: Equivalent
Total
Percent
Finished
Item
Units
Complete
Units
Units shipped before 2-28-57
96
100
96
Units on hand, shipped 3-1-57
10
100
10
Units per inventory
Tickets Nos. 37558 and 38177
2
100
2
Nos. 38178 and 38179
2
80
1.6
No. 38182
1
50
.5
Nos. 38180 and 38181
2
75
1.5
Components per other tickets
160
41
65.6
273
177.2
Costs incurred to February 28, 1957, for materials, direct labor and overhead for Job No. 1120 as shown by petitioner's job cost ledger, amounted to $308,702.13. These costs as determined by petitioner's accountants, amounted to $305,992.85. Based upon their determination of the costs incurred and the equivalent units completed to February 28, 1957, petitioners' accountants determined that the *257 cost of manufacturing these trailers would amount to $1,164.41 per unit, computed as follows: Equivalent
Total
Finished
Unit
Item
Costs
Units
Cost
Materials
Materials purchased
$125,031.04
Freight
8,280.54
Subcontracts
76,661.67
Total materials
$209,973.25
Less not yet in process
99,893.56
Cost of material for units finished or in
process
110,079.69
177
$ 621.92
Direct labor
38,407.84
177
217.00
Overhead
57,611.76
177
325.49
$206,099.29
$1,164.41
Substantially all of the material for the completion of Job No. 1120 had either been acquired or ordered at February 28, 1957. This was material specially ordered for this job and was not suitable for use on petitioner's other contracts. Based upon the final costs of completing the contract and the costs incurred to February 28, 1957, as determined by petitioner's accountants, the percent of such costs incurred up to February 28, 1957, was as follows: Percent
Materials in process or finished
43.63
Materials not yet in process
39.59
Total materials
83.22
Direct labor
48.57
Overhead
48.94
Total costs
68.14
Petitioner used the accrual method of *258 accounting and on its first return an election was made to value its inventories on the basis of the lower of cost or market. As of February 28, 1957, petitioner's inventories on hand pertaining to Job No. 1120 consisting of materials, direct labor, and overhead, taken at cost, as shown by petitioner's inventory tickets, amounted to $126,770.28, classified as raw materials not yet in process in the amount of $96,332.93, materials in process in the amount of $13,550.55 and labor and overhead in the amount of $16,886.80. The same inventories taken at cost, as determined by petitioner's accountants, amounted to $194,209.49, classified as raw materials in the amount of $99,893.56 and work in process in the amount of $94,315.93. Based upon the costs already incurred and upon the unit manufacturing cost of $1,164.41 determined by petitioner's accountants, the accountants estimated that the cost of completion of the 286 units for Job No. 1120 yet to be delivered would amount to $138,811.77. The actual cost of manufacturing these trailers, as determined after the contract was completed, from the costs shown in petitioner's job cost ledger, amounted to $1,175.57 per unit. The actual cost *259 of completing the 286 units during the fiscal year ended February 28, 1958, based on the difference between the final costs and the costs incurred to February 28, 1957, both as shown by petitioner's job cost ledger, amounted to $140,363.88. The cost of completing the 286 units, based on the difference between the final costs shown in petitioner's job cost ledger and the costs incurred to February 28, 1957, as determined by petitioner's accountants, amounted to $143,073.16. Based upon the contract price petitioner's accountants determined that the amount which would be received for the 286 units when they were completed and delivered was $230,007.11. In its income tax return for the fiscal year ended February 28, 1957, petitioner reported its inventories for Job No. 1120 at a total net value of $91,195.34 by reporting goods in process at a value of $65,141.82, a reduction of $29,174.11 from the cost of such goods in process as determined by petitioner's accountants and by reporting raw materials at a value of $99,893.56, offset by a deduction for estimated loss on uncompleted contract of $73,840.04. The adjustment of $103,014.15 was considered by petitioner's accountants to represent *260 a reduction of petitioner's inventory as of February 28, 1957, from cost to market. The deduction of $73,840.04 taken on the income tax return for the fiscal year ended February 28, 1957, as estimated loss on uncompleted contracts was entered on the books of the petitioner. The item also appeared on the balance sheet in the audit report for the year ended February 28, 1957, submitted to petitioner by its accountants on June 17, 1957. Respondent in his notice of deficiency decreased the amount claimed on petitioner's return for the fiscal year ended February 28, 1957, as cost of goods sold by $103,014.15 with the following explanation: It is determined that the cost of goods sold in the year ended February 28, 1957 was overstated on your return by $103,014.15. This is based on a determination that you have not shown that the "market value" of your inventory of work in process on Job No. 1120 at February 28, 1957 was less than your cost of $94,315.93, thus it is necessary to increase your closing inventory, as reported, by $29,174.11, which reduces your cost of goods sold by a like amount. In addition you have not shown that a reserve of $73,840.04 included in the cost of goods *261 sold is deductible under any section of Internal Revenue Code of 1954, thus it is necessary to reduce your cost of goods sold by this additional amount. Opinion Petitioner in the instant case takes the position that it knew by the end of its fiscal year ended February 28, 1957, that the cargo trailers to be delivered under its contract with the Government would result in a loss; that the amount of the loss could be estimated with reasonable certainty, and therefore it was entitled to write down its inventory of materials, work in process, and finished trailers to adjust for the loss. Petitioner contends that this is in accordance with the requirement of the statute and respondent's regulations that inventories conform to the best accounting practice in the taxpayer's trade or business and clearly reflect the taxpayer's income. [1]
*262 The parties are agreed that petitioner had clected and is entitled to value its inventories at cost or market whichever is lower. The respondent takes the position that under his regulations [2] which have been held to be valid the petitioner's inventories were required to be priced at cost since they were goods on hand or in process for delivery upon a firm sales contract relying on Bibb Mfg. Co. v. Rose, 81 F. 2d 228 (C.A. 5, 1936), certiorari denied 299 U.S. 550 (1936). Cf. Crown Manufacturing Co., 12 B.T.A. 37 (1928), and Mutual Chemical Co. of America, 12 B.T.A. 578 (1928). Respondent argues that section 1.471-4, Income Tax Regulations, under the Internal Revenue Code of 1954 is substantially the same as the regulations which have been in effect since 1920 and that the provisions of these regulations have been uniformly sustained by the courts.
*263 Petitioner directs attention to the fact that the provision of the regulations with respect to goods on hand or in process of manufacture for delivery upon firm sales contracts which was under consideration in Bibb Mfg. Co. v. Rose, supra, and cases decided prior to that case differs from the provisions of section 1.471-4, Income Tax Regulations, under the 1954 Code in that the regulation considered in those cases and the comparable provisions of the income tax regulations for subsequent years up through Regulations 86 relating to the income tax under the Revenue Act of 1934 provided for this exclusion in the following language: exclusive, however, of goods on hand or in process of manufacture for delivery upon firm sales contracts (i.e., those not legally subject to cancellation by either party) at fixed price entered into before the date of the inventory, which goods must be inventoried at cost. Petitioner points out that beginning with the provisions of article 22(c)-4 of Regulations 94 relating to the income tax under the Revenue Act of 1936 and continuing in all subsequent regulations to and including those presently issued *264 under the Internal Revenue Code of 1954, this exclusion contains the phrase "under which the taxpayer is protected against actual loss" following reference to firm sales contracts at fixed prices entered into before the date of inventory. It is petitioner's position that under its contract with the United States Army Ordnance Corps for the manufacture of cargo trailers, it did not have a fixed price which protected it against loss. Petitioner cites McKay Machine Co., 28 T.C. 185, 194 (1957), as approving the interpretation of these regulations for which it contends. That case involved the valuing for inventory purposes of the component parts of a machine being built by the taxpayer therein under contract with the Union of Soviet Socialist Republics and held that the inventories were properly valued at the market or realizable value thereof since they were similar to obsolete or damaged merchandise. In McKay Machine Co., supra, the taxpayer had been denied an export license for the machine, and the representative of the purchaser had left the country. In holding the provision of the regulations with respect to firm sales contracts at fixed prices to be inapplicable *265 in the situation involved in McKay Machine Co., supra, we stated: "As we see it, that provision of the regulations is not applicable here since the contract involved under the circumstances did not protect the petitioner against actual loss." While the facts in McKay Machine Co., supra, were, as pointed out by respondent, substantially different from those involved in the instant case, we believe the statement that the contract involved there did not protect the taxpayer against actual loss is equally applicable here and that the portion of the regulation dealing with goods on hand or in process of manufacture for delivery upon firm sales contracts under which the taxpayer is protected from actual loss does not apply to petitioner. We feel, however, that the method used by petitioner in valuing its inventories is not otherwise in accordance with the provisions of section 1.471-4, Income Tax Regulations, which contain substantially the same provisions as have the regulations from 1920 to date and have been uniformly approved by the courts. Cf. D. Loveman & Son Export Corp., 34 T.C. 776 (1960), affd. 296 F. 2d 732 *266 (C.A. 6, 1961). There is no indication that petitioner's inventory of materials which is shown at a cost of $99,893.56 did not consist of items purchased on the open market which would have a definite market price represented by the current bid price prevailing at the inventory date for this type of merchandise in the volume in which it was usually purchased by petitioner. Petitioner's plant manager and chief engineer testified that the materials acquired were not suitable for general use upon petitioner's regular type of contract and that all of the parts and pieces were of a specified design applicable to the particular military type trailer which petitioner was manufacturing and petitioner would not have been able to sell these materials profitably to somebody else had the Government cancelled the order at February 28, 1957. However, this testimony in no way shows that the market price of these materials at February 28, 1957, was not as high as petitioner's cost. It does not go so far as to state specifically that petitioner might not have been able to dispose of the materials at the cost price thereof. Petitioner has offered no evidence that these materials were not salable at *267 normal prices or that they were damaged or obsolete. Cf. Justus & Parker Co., 13 B.T.A. 127 (1928), and Ewing-Thomas Converting Co., 1 B.T.A. 121 (1924). Petitioner relies upon its contention that since it was anticipated that in the year following its fiscal year ended February 28, 1957, these materials would be used to manufacture trailers which would be sold at a loss, it is entitled to adjust its inventory at February 28, 1957, for part of that loss. In effect, petitioner with respect to the $73,840.04 adjustment to the $99,893.56 in ventory of materials not yet in process, is attempting to take in its fiscal year ended February 28, 1957, a loss which it anticipates it will incur in the following year under its contract with the United States Army Ordnance Corps. The petitioner's argument in support of this adjustment is that it is in accordance with sound accounting principles to provide as of the end of its fiscal year 1957 for such an anticipated loss. While for petitioner's own benefit in appraising its financial position with respect to its Government contract some recognition of the anticipated loss might be appropriate, this is not equivalent *268 to a showing that such a method of accounting so clearly reflects income as to be proper for the purposes of computing taxable income. American Automobile Association v. United States, 367 U.S. 687 (1961). Cf. Ewing-Thomas Converting Co. v. McCaughn, 43 F. 2d 503 (C.A. 3, 1930). The burden is upon petitioner to establish that the market value of its inventory of materials not in process is less than its cost thereof. It has failed to carry this burden. With respect to the 12 finished trailers in inventory at February 28, 1957, we believe the evidence is clear that petitioner's market price therefor was $804.21. We believe the cost of these finished trailers which is computed by petitioner's accountant to be $1,164.41 each is reasonably accurate. In Abbeville Cotton Mills, 10 B.T.A. 646, 650 (1928), we commented: While conditions may exist on a declining market which would justify fixing the market value of an inventory of finished goods for a manufacturing concern at what these goods could be sold for, rather than what it would cost to manufacture them, a finding to that effect cannot be made in this case on the evidence presented. Respondent *269 has recognized in G.C.M. 9401, X-1 C.B. 102, 106, that an adjustment from cost to market for finished goods may be appropriate for a manufacturer stating: purchased or produced goods in the inventory of a manufacturer in a form salable on the open market on the inventory date should be valued at the current bid prices prevailing in the open market for like goods on that date; and that any such goods which have been moved into process to a further state of manufacture, but which have not reached a form salable on the open market, should be valued at the current bid prices prevailing on the inventory date for goods of the preceding salable form plus the necessary labor and burden attaching up to the state in which the goods are found on the inventory date. * * * Cf. Ideal Reversible Hinge Co., 7 B.T.A. 1066 (1927). Petitioner's witness did not testify whether the 2 trailers which were 80 percent completed and the 2 which were 75 percent completed at February 28, 1957, were in a salable state as of that date. The fact that 10 trailers were shipped on March 7, 1957, in addition to the 10 shipped on March 1, 1957, indicates that these 4 trailers, in addition *270 to the completed trailers in inventory, must have been sufficiently complete to be in salable form. We, therefore, hold that petitioner had 16 trailers in salable state at February 28, 1957, with a cost of $360.20 in excess of the market value thereof. Petitioner's finished goods and in-process inventory which had a cost of $94,315.93 should be reduced by $5,763.20 to place the finished goods therein on a basis of market which is lower than petitioner's cost of such finished goods. *
There is insufficient evidence in the record with respect to petitioner's in-process inventory to show what the fair market value thereof might be. Because of this failure of proof we sustain respondent's determination with respect to the balance of this inventory. Decision will be entered under Rule 50. Footnotes
1. Sec. 471, I.R.C. 1954. GENERAL RULE FOR INVENTORIES. Whenever in the opinion of the Secretary or his delegate the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary or his delegate may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income. Sec. 1.471-2(a)(1)(2), Income Tax Regs. Valuation of inventories. (a) Section 471 provides two tests to which each inventory must conform: (1) It must conform as nearly as may be to the best accounting practice in the trade or business, and (2) It must clearly reflect the income.↩
2. Sec. 1.471-4, Income Tax Regs. Inventories at cost or market, whichever is lower. (a) Under ordinary circumstances and for normal goods in an inventory, "market" means the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which usually purchased by the taxpayer, and is applicable in the cases - (1) Of goods purchased and on hand, and (2) Of basic elements of cost (materials, labor, and burden) in goods in process of manufacture and in finished goods on hand; exclusive, however, of goods on hand or in process of manufacture for delivery upon firm sales contracts (i.e., those not legally subject to cancellation by either party) at fixed prices entered into before the date of the inventory, under which the taxpayer is protected against actual loss, which goods must be inventoried at cost. (b) Where no open market exists or where quotations are nominal, due to inactive market conditions, the taxpayer must use such evidence of a fair market price at the date or dates nearest the inventory as may be available, such as specific purchases or sales by the taxpayer or others in reasonable volume and made in good faith, or compensation paid for cancellation of contracts for purchase commitments. Where the taxpayer in the regular course of business has offered for sale such merchandise at prices lower than the current price as above defined, the inventory may be valued at such prices less direct cost of disposition and the correctness of such prices will be determined by reference to the actual sales of the taxpayer for a reasonable period before and after the date of the inventory. Prices which vary materially from the actual prices so ascertained will not be accepted as reflecting the market. (c) Where the inventory is valued upon the basis of cost or market, whichever is lower, the market value of each article on hand at the inventory date shall be compared with the cost of the article, and the lower of such values shall be taken as the inventory value of the article.↩
*. Previous paragraph was deleted and new paragraph was added by an official order of the Tax Court dated March 26, 1962 and signed by Judge Scott.↩