**EWING THOMAS CONVERTING CO. v. McCAUGHN, Collector of Internal Revenue.**

**No. 4154.**

Circuit Court of Appeals, Third Circuit.

Sept. 11, 1930.

James L. Rankin, J. DeHaven Ledward, and Geary & Rankin, all of Chester, Pa., for appellant.

George W. Coles, U. S. Atty., and Mark Thatcher, Asst. U. S. Atty., both of Philadelphia, Pa., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Elden O. Hanson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

The question raised in this case is whether or not the taxpayer is entitled to take a loss in his return for the year 1919, the year in which, it is alleged, the loss actually occurred, and in which the liability was susceptible of being fixed with reasonable certainty, or must he take the loss for the year 1920 when the contract was actually completed?

The Ewing Thomas Converting Company, appellant, during the years 1918 and 1919, was engaged in the business of mercerizing and winding cotton yarn in Chester, Pa. Between September 1918 and May 29, 1919, it entered into a number of contracts with Clarence L. Meyers of Philadelphia which required it to deliver to Meyers certain specified quantities of mercerized cotton yarn by the middle of the year 1919. During all this time the price of yarn steadily advanced. Meyers was constantly demanding delivery of yarn in accordance with the contract. On December 31, 1919, the appellant had 53,198 pounds of yarn to deliver on the Meyers contracts, and this should have been delivered by the middle of that year. Appellant had purchased a great deal of yarn, but none of it had been specifically allocated to these particular contracts, as it had many other contracts to fill in addition to those it had with Meyers.

It was evident that the appellant would sustain a large loss on the Meyers contracts. Its best estimate was that the loss would be $1 a pound on the yarn which was unde-

livered of $53,198. As a fact, the loss turned out to be $67,641.16. All the yarn called for by the contracts was delivered by May 20, 1920. The question is in what year the loss should be taken, in 1919 or 1920?

Practically, it makes a great difference to the taxpayer whether the loss is taken in 1919 or 1920. If the Commissioner's contention is right, the appellant's profits for 1919 were increased to $74,907.04 and its taxes to $30,418.92; while it suffered a loss in 1920.

The question as presented by the collector is: "Where at the close of the year 1919 the taxpayer was under binding contracts for the sale of merchandise at a price less than the cost and less than the market price of similar merchandise at the close of the year, may it take as a deduction from income for said year a sum equal to the loss which it estimates will be sustained in the performance of such contracts?"

Section 214 (a) of the Revenue Act of 1918 (40 Stat. 1057), which controls this case, provides that, in computing the net income of a corporation subject to the tax, there shall be allowed as deductions: "(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise." The question is whether or not the loss on the Meyers contracts was sustained during the taxable year 1919 or 1920. The case depends upon the statutory definition of the word "sustained." The statute obviously does not contemplate and the regulations (article 144) forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer. New York Insurance Co. v. Edwards, 271 U. S. 109, 116, 46 S. Ct. 436, 70 L. Ed. 859. The Supreme Court in the case of United States v. White Dental Co., 274 U. S. 398, 47 S. Ct. 598, 600, 71 L. Ed. 1120, defined what the statute does contemplate: "The deduction from gross income of losses, which are fixed by identifiable events, such as the sale of property (article 141, 144), or caused by its destruction or physical injury (article 141, 142, 143), or, in the case of debts, by the occurrence of such events as prevent their collection (article 151)." None of these contingencies or facts were present to show that a loss had been sustained in the instant case. The loss was due to the drop in the market value of yarn. The fact that the loss was $67,641 rather than $53,198 shows that the loss had not been suffered and was not actually and wholly suffered until the close of the transaction when it was possible to de-

termine exactly what the loss was. The taxpayer could have taken such steps by the close of the year 1919 in the purchase and appropriation of sufficient yarn to complete the Meyers contracts, and it would have known exactly what the loss was. This would have been an identifiable event which would have fixed the loss so that it could be said without doubt to have been sustained in the year 1919, but the transaction was not completed until May 20, 1920, and it cannot be said that the loss was sustained in 1919, for, as a matter of fact, it was sustained only in part in that year, and, since the taxpayer did not see fit to complete the transaction within the year required by the contracts and unmistakably determine the loss, he may not be permitted to gamble with the market for five months in 1920 and say that he potentially sustained the loss in 1919. As a matter of fact it was not completed, and the loss was partly sustained in one year and partly in another year. It cannot be known what the loss actually sustained is until the transaction is completed or some definite thing done to determine the loss. "Generally speaking, the income tax law is concerned only with realized losses, as with realized gains. Weiss v. Weiner, 279 U. S. 333, 335, 49 S. Ct. 337, 73 L. Ed. 720. Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test." Lucas, Commissioner of Internal Revenue v. American Code Co., Inc., 280 U. S. 445, 449, 50 S. Ct. 202, 203, 74 L. Ed. 538.

The Board of Tax Appeals has held in a series of well-reasoned opinions that a loss occasioned by the taxpayer's breach of contract is not deductible in the year of the breach, except under special circumstances where, within the year, there is a definite admission of liability, negotiations for settlement are begun, and a reasonable estimate of the amount of the loss is accrued on the books. Lucas, etc., v. American Code Co., Inc., supra, and the cases cited in foot note on page 450 of 280 U. S., 50 S. Ct. 203, 74 L. Ed. 538. The mere refusal to perform a contract does not justify the de-

duction. as a loss, of the anticipated damages. To justify the allowance of the deduction in the year of the breach, the contract must be performable in a comparatively short period; the approximate amount of damages must be reasonably predictable; negotiations for settlement must be commenced within the year and completed soon after its close; and the taxpayer must accrue on its books, at the end of the year, a liability reasonably estimated to equal the amount of the damages. Lucas, etc., v. American Code Co., Inc., supra.

In the case at bar there was no breach except the failure to deliver on time and this Meyers gladly forgave. However, the contracts were performable in a comparatively short time, and the appellant accrued, it says, on its books a liability reasonably estimated to equal its loss.

The crux of this case depends upon whether or not the amount of the liability could be determined with reasonable certainty on December 31, 1919. This in turn depended upon the ability to predict "the course of future events," what the market price of mercerized cotton yarn would be during the next four or five months within which it hoped to comply, and did comply, with the contract requirements. The appellant acted in perfect good faith, but how soon it could fill the contracts depended upon market conditions, which no one could foretell with reasonable accuracy, and how the prices would vary during that time, and what the actual loss would ultimately be, was a mere guess. As above stated, no specific merchandise had been appropriated to the performance of these contracts. If the price had suddenly gone down, as it often does, with no reason apparent to merchants generally, the appellant could have completed these contracts with little or no loss, but it went up, and the estimated loss was too low. Consequently the estimated amount of the loss was a mere guess and could not be fixed with any reasonable certainty until the contracts were fully performed under the future prices. A person cannot claim to have sustained a loss before the future fails to justify his prophecy. Taxes cannot be based on the contingencies of the market. Edward R. Bacon Grain Co. v. Reinecke (D. C.) 26 F.(2d) 705; New York Life Insurance Co. v. Edwards, 271 U. S. 109, 46 S. Ct. 436, 70 L. Ed. 859; Lewellyn v. Electric Reduction Co., 275 U. S. 243, 246, 48 S. Ct. 63, 72 L. Ed. 262.

It follows that the judgment must be affirmed.