COMMISSIONER OF INTERNAL REVENUE v. NEW HAMPSHIRE FIRE INS. CO.

NEW HAMPSHIRE FIRE INS. CO. v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 4012, 4013.

Circuit Court of Appeals, First Circuit.

Jan. 17, 1945.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

Bernard Chertcoff, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for Commissioner of Internal Revenue.

Robert Ash and W. T. Durant, both of Washington, D. C., for New Hampshire Fire Ins. Co.

WOODBURY, Circuit Judge.

These cross petitions for review of a decision of the Tax Court of the United States raise questions with respect to the income tax liability of the New Hampshire Fire Insurance Company for the calendar years 1936, 1937 and 1938. The facts are stated in detail in the opinion of the Tax Court. 2 T.C. 708. For the purposes of these petitions they can be summarized.

The taxpayer is a stock fire insurance company organized under the laws of New Hampshire and maintaining its home office in that state. Being an insurance company other than a life or mutual one it was taxable for the years in question under § 204 of the Revenue Acts of 1936 and 1938,[1] 26 U.S.C.A. Int.Rev.Acts, pages 900, 1090.

For each of the years involved the taxpayer filed annual statements with the Insurance Commissioner of the State of New Hampshire on the form approved by the National Convention of Insurance Commissioners (called the Convention Form) and it used the exact figures appearing in the underwriting and investment exhibit of that form in computing its gross underwriting income for those years. The Com-missioner's position is that the taxpayer ought not to have used those figures as they stood but instead should have made certain adjustments in them. To understand his position some explanation of the way the insurance business is conducted is required.

During the years involved the taxpayer, in accordance with accepted practice, reinsured portions of its risks with other companies, and, also in accordance with accepted practice, it placed some of its reinsurance with companies which were not authorized to do business in New Hampshire.[2] Although there is nothing in any way illegal or improper in reinsuring with unadmitted companies, nevertheless it is the long established practice of all state

---

[1] Since the above numbered sections of the two Acts and of the applicable regulations are identical in all respects here material it will suffice to quote only the relevant parts of the section as it appeared in the 1936 Act and of the regulations promulgated thereunder.

Revenue Act of 1936, c. 690, 49 Stat. 1648:

"Sec. 204. Insurance companies other than life or mutual.

"(a) Imposition of tax.

"(1) In general.—In lieu of the tax imposed by sections 13 and 14, there shall be levied, collected, and paid for each taxable year upon the normal-tax net income of every insurance company (other than a life or mutual insurance company) a tax of 15 per centum of the amount thereof.

\*    \*    \*    \*    \*    \*

"(b) Definition of income, etc.—In the case of an insurance company subject to the tax imposed by this section—

"(1) Gross income. 'Gross income' means the sum of (A) the combined gross amount earned during the taxable year, \* \* \* from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners.

\*    \*    \*    \*    \*    \*

"(4) Underwriting income.—'Underwriting income' means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

"(5) Premiums earned.—'Premiums earned on insurance contracts during the taxable year' means an amount computed as follows:

"From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year;

"(6) Losses incurred.—'Losses incurred' means losses incurred during the taxable year on insurance contracts, computed as follows:

"To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year, and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year. To the result so obtained add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year; \* \* \*."

"Treasury Regulations 94 \* \* \*

"Art. 204 (b)-1. Gross income of insurance companies other than life or mutual.—Gross income as defined in section 204(b) means the gross amount of income earned during the taxable year from interest, dividends, rents, and premium income, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, \* \* \*. The underwriting and investment exhibit is presumed clearly to reflect the true net income of the company, and in so far as it is not inconsistent with the provisions of the Act will be recognized and used as a basis for that purpose."

[2] Such companies are ordinarily referred to as "unadmitted" companies and reinsurance placed with them is called "unauthorized" reinsurance.

insurance commissioners, and this in spite of the fact that no mention whatever of unauthorized reinsurance is made in the Convention Form, to require that in computing "unearned premiums" and "salvage and reinsurance recoverable", figures relating to transactions with unadmitted companies must be omitted from the annual statements made to them on the Form. The reason for this is that the Form is used by the state commissioners as the basis for calculating the reserves which insurance companies must set up for their liabilities, and, since no state commissioner has control over any company not admitted to do business in his state, it is their practice to require full reserves when a portion of a risk is reinsured with an unadmitted company, although reserves for only such portions of the insurance as is retained or carried are required when reinsurance is with an admitted company. Thus the underwriting and investment exhibit of the Convention Form does not reflect all of an insurance company's reinsurance transactions but reflects in full only its transactions of that nature with admitted companies. To this extent, therefore, the exhibit gives a distorted picture of the company's books, and the Commissioner says the books, not the exhibit, should be used to determine income tax liability.

The mathematical differences between the Commissioner's and the taxpayer's methods of computation are fully set out in the Tax Court's opinion. For present purposes it is sufficient to state that the taxpayer in reporting its income followed the procedure required in making up its exhibit, that is, ignored its reinsurance transactions with unadmitted companies in computing its "unearned premiums" and "salvage and reinsurance recoverable", and that the Commissioner determined his deficiency on the ground of failure "to make appropriate adjustments for the amounts of unearned premiums and unpaid losses on risks which had been reinsured with companies not authorized to do business in the state."

On appeal by the taxpayer the Tax Court did not sustain the Commissioner on this point, although it did on some others not before us on these petitions, and in consequence redetermined the taxpayer's income tax liability. Thereupon the Commissioner filed his instant petition for review and the taxpayer filed a cross petition to protect itself in the event that we should reverse the Tax Court.

The Commissioner's petition raises, apparently for the first time in any regular court, a perplexing question with respect to the role which Congress intended the so-called Convention Form to play in the income tax accounting of insurance companies other than life or mutual. It is phrased by the Tax Court, possibly somewhat too broadly, but still for present purposes we believe accurately, as "whether, under the provisions of section 204(b) of the Revenue Acts of 1936 and 1938, the statutory standard (the Convention Form), universally long accepted and established throughout the United States, which does not recognize transactions with unadmitted companies, shall govern the computation of income of insurance companies other than life or mutual, or whether the entire business done by such companies, including transactions with unadmitted companies, shall be considered as correctly reflecting income for a given year and therefore form the basis for such computation."

To answer this question we turn first to the wording of the statute. It defines gross income as consisting in part of the gross amount earned from underwriting income "as provided in this subsection, computed on the basis of the underwriting and investment exhibit" of the Convention Form. Then it goes on to define underwriting income as premiums earned less losses and expenses incurred, and next it defines in detail how premiums earned and losses incurred are to be computed—these computations requiring in the case of premiums earned the addition of "unearned premiums on outstanding business at the end of the preceding taxable year" and the deduction of "unearned premiums on outstanding business at the end of the taxable year" and in the case of losses incurred the addition of "salvage and reinsurance recoverable outstanding at the end of the preceding taxable year" and the deduction of "salvage and reinsurance recoverable outstanding at the end of the taxable year." Now clearly if the return exactly follows the underwriting and investment exhibit of the Form as it is required to be filled out and filed in every state, only unearned premiums with respect to reinsurance with, and salvage and reinsurance recoverable from, admitted companies will be taken into account for income tax purposes, and, on the other hand, if all reinsurance transactions

are taken into consideration in computing income taxes, then income will not be "computed on the basis" of the Form.

The Commissioner offers two means of escape from this dilemma. He first says, that Congress must have intended the statute under consideration, in conformity with the principle of all tax statutes, to reach all underwriting income and that to achieve this purpose it must have intended the use of the Form merely as a general guide to be followed only insofar as it is not in conflict with the detailed and explicit provisions of the statute with respect to the computation of underwriting income, and second, that since the Form does not direct that transactions with unadmitted companies be disregarded, it in fact requires the inclusion of figures with respect to all reinsurance transactions; the requirement that such transactions with unadmitted companies be omitted from the Form being only a local one which ought not to be taken into account in computing taxable income.

■ We find little merit in the Commissioner's second contention. The Tax Court has found that the Convention Form has been in use for a great many years; that it "is accepted by every state of the Union and the District of Columbia"; and that "Figures relating to transactions with unadmitted companies were omitted from the petitioner's (taxpayer's) annual statements on the Convention Form because it is the accepted practice in all states so to treat them." On the basis of these facts we agree with the Tax Court that Congress in enacting the statute under consideration must have intended the use of the Convention Form "as understood, followed, and applied in the insurance world."

■■ The Commissioner's first contention has real substance. We concede that as a fundamental principle tax returns must truly reflect income, and that returns based exclusively on the Convention Form do not. Obviously to truly reflect income what is important is the business actually done by the taxpayer, and whether it did business with companies which had complied with the requirements for admission to do business in New Hampshire, or whether it did not is a wholly extraneous consideration. But there seem to us considerations that more than counterbalance this contention.

The Tax Court in its opinion points out, and we are certainly not disposed to disagree, that it is an "axiomatic fact that insurance bookkeeping and accounting are highly complicated processes", and we cannot doubt that Congress had this and the consequent difficulty of imposing a proper tax on a business so complex and technical as insurance in mind when it first enacted the statute under consideration in the Revenue Act of 1921 § 246, 42 Stat. 262. The legislative history of the statute cited by the Tax Court amply substantiates this assumption. From Congress' apparent search for a simple method for reporting income for tax purposes and from the Tax Court's conclusion, which we take to be on a matter of "tax accounting" (Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239), that "over a period of years doubtless approximately the same amount of income would be earned and tax paid thereon by the use of either" the method of reporting used by the taxpayer or the method advocated by the Commissioner, and also from the further fact that Congress made no attempt to prescribe a formula (it would necessarily have to be complex) for determining "unearned premiums" and "salvage and reinsurance recoverable", we think that these technical terms "must be considered to be used in the sense in which such terms are generally used or understood in the insurance business." Massachusetts Protective Association v. United States, 1 Cir., 114 F.2d 304, 311. That is, that Congress used them in the way they had long been used throughout the United States in the Convention Form. Thus we conclude that the Tax Court correctly decided that the Convention Form, as to the items under consideration, "should be followed precisely according to its terms and as employed, accepted, and complied with throughout the United States."

■ Another consideration supports our conclusion that the decision of the Tax Court ought to be affirmed. It appears that the taxpayer's return is made up in the same way that it and other similar insurance companies have made up their returns ever since the Revenue Act of 1921 became applicable. And, as already pointed out, it is found that in the long run it will make no substantial difference in the amount of taxes paid whether its or the Commissioner's method of computation is used. Under these circumstances it seems to us that established practice ought to be followed for the reason that to do so will avoid useless confusion and expense to the

taxpayer and to the Bureau of Internal Revenue. Continuity in tax administration is highly desirable and we do not think its advantages should be sacrificed to gain a largely theoretical accuracy.

The result we have reached renders unnecessary any consideration of the baffling problem of the scope of our power of review—whether the question before us is, as the Commissioner contends, one of statutory construction and hence one of law as to which we have full power of review—or whether it is, as the taxpayer contends, one of "proper tax accounting" as to which our powers of review are strictly circumscribed by the decision of the Supreme Court in the Dobson case, supra. Furthermore, our result renders unnecessary any consideration of the issues raised by the taxpayer's cross-petition for review.

The decision of the Tax Court is affirmed.