COLUMBUS AND SOUTHERN OHIO ELECTRIC COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56193.   Filed June 29, 1956.

*Joseph S. Platt, Esq.,* and *Lawrence D. Stanley, Esq.,* for the petitioner.

*John C. Calhoun, Esq.,* for the respondent.

#### OPINION.

TIETJENS, *Judge:* Respondent determined a deficiency in income tax for 1951 in the amount of $601,859.16.   Some of the respondent's adjustments are not contested.   The sole issue is whether petitioner is entitled to accrue a deduction for rate differential refunds in 1951. The facts are stipulated.   The petitioner filed its corporation income tax return with the collector of internal revenue at Columbus, Ohio.

The facts are found as stipulated and the exhibits are incorporated by this reference.

The petitioner is an Ohio corporation and is a public utility, as defined in the laws of Ohio, furnishing electricity to consumers in the city of Columbus and nearby areas.   Its Federal income tax returns are filed upon the basis of calendar years and the tax computed on an accrual method of accounting.

The City Council of Columbus, pursuant to section 192 of the City Charter and the laws of Ohio, enacted Ordinance No. 718–49, on September 7, 1949, subject to approval of the electors voting at an election to be held November 8, 1949, fixing the rates to be charged by the petitioner in the city during the period of 5 years beginning November 15, 1949.   These rates were substantially lower than the rates previously in effect and being charged by the petitioner.

The petitioner, on October 28, 1949, pursuant to section 614–44 of the General Code of Ohio, appealed to the Public Utilities Commission of Ohio from the ordinance.   Pursuant to section 614–45 of the code the petitioner elected to continue to charge the electric rates then in effect in Columbus and filed bond for benefit of the consumers affected conditioned upon the petitioner's refunding to them the amount

collected in excess of the amount finally determined on the basis of the rates fixed by the commission.

At the election of November 8, 1949, the 1949 ordinance was approved by a majority of the electors voting thereon. On December 2, 1949, the petitioner filed with the commission a supplement to its appeal and refiled its bond which bond was approved by the commission. On March 1, 1950, the commission ordered an increase in the amount of the bond from $300,000 to $1,500,000 with which order the petitioner complied.

On and after March 1, 1950, inventories and appraisals of petitioner's properties were filed with and oral testimony taken by the commission respecting the rate of return.

On September 5, 1950, the City Council of Columbus enacted Ordinance No. 729–50. This ordinance referred to the 1949 ordinance and to the appeal therefrom filed by the petitioner with the commission and read, in part:

WHEREAS, it is in the best interests of the Company's consumers of electricity in the City of Columbus that the City of Columbus and the Company settle on the basis hereinafter set forth all pending electric rate litigation, inclusive of such Complaint and Appeal; and

WHEREAS, it is the duty of this Council to provide for the submission of this ordinance to the vote of the electors of the City of Columbus for their approval or rejection at the election to be held on November 7, 1950, * * *

NOW, THEREFORE,

BE IT ORDAINED by the Council of the City of Columbus, Ohio, as follows:

Section 1. Subject to the terms and conditions of this ordinance, the rates and prices which Columbus and Southern Ohio Electric Company, its successors and assigns, shall be entitled to charge for residential electric service and small commercial light and power electric service furnished to consumers in the City of Columbus, Ohio, are hereby fixed at not to exceed the following for the period of two years commencing November 15, 1950, and thereafter for two successive two-year periods (The last period ending November 14, 1956), with rights of cancellation as more fully set forth in Section 2 of this ordinance:

\* \* \* \* \* \* \*

Section 3. In the event this ordinance shall be approved by the electors of the City of Columbus and be accepted by the Company as provided in Section 7 hereof, the rates and prices for electric service rendered by the Company during the period commencing November 15, 1949 and ending November 14, 1950 are hereby fixed as follows:

\* \* \* \* \* *

and the City Attorney of the City of Columbus be and hereby is authorized and directed in the name and on behalf of the City of Columbus, to the end that the Company's Complaint and Appeal before said Commission in said Proceeding No. 21,106 may be terminated, to enter into a stipulation in writing with the Company authorizing said Commission to dispose of said Proceeding by entering a final order therein making effective the provisions of said stipulation, said stipulation to be substantially as follows:

\* \* \* \* \* \* \*

Columbus and Southern Ohio Electric Company and the City of Columbus, Ohio, as parties to the above entitled Complaint and Appeal, hereby stipulate and agree,

to the end that the above entitled Complaint and Appeal may be terminated, that The Public Utilities Commission of Ohio be and hereby is requested and authorized to dispose of the above entitled proceeding by entering a final order herein substantially as follows:

A. Finding that the rates and charges fixed by Ordinance of the City of Columbus No. 729–50 for the period commencing November 15, 1949 and ending November 14, 1950, and accepted by the Company, are just and reasonable and substituting them, for such one-year period, for the rates and charges contained in said Ordinance No. 718–49.

B. Directing the Company to refund within one year from the date of said order of said Commission

(a) to its residential consumers a sum equal to the excess of the amounts billed to them between November 15, 1949 and November 15, 1950 over the amounts payable by them under the schedule of residential service rates specified in subparagraph (1) of Section 3 of ordinance of the City of Columbus No. 729–50; [1] and

*　　　*　　　*　　　*　　　*　　　*　　　*

C. Making such other orders in respect to the manner of making such refunds as said Commission may deem necessary; and

*　　　*　　　*　　　*　　　*　　　*　　　*

Said City Attorney is further authorized and directed to take such steps as he may deem essential to effect the purposes of this ordinance and to secure the final disposal of said Complaint and Appeal upon the basis above outlined.

Section 4. In the event this ordinance shall be approved by the electors of the City of Columbus and be accepted by the Company as provided in Section 7 hereof, Ordinance No. 718–49 be and hereby is repealed.

*　　　*　　　*　　　*　　　*　　　*　　　*

Section 6. This ordinance shall be submitted to a vote of the qualified electors of the City of Columbus at the election to be held on the 7th day of November 1950 in accordance with law and the Charter of said City, and at the regular voting places in said City; and said election shall be conducted, canvassed and certified in the same manner as general elections.

The rates provided by the 1950 ordinance were higher than those fixed by the 1949 ordinance but lower than the rates in effect prior to November 15, 1949, and upon the basis of which the petitioner had been making collections from its customers subject to possible refund.

On September 27, 1950, the petitioner accepted in writing the 1950 ordinance and agreed in the event the ordinance was approved by the electors to join with the city attorney in submitting to the commission the stipulation provided for in that ordinance and to be bound by an order of the commission substantially as provided for in the stipulation and to make refunds as provided therein.

At the election of November 7, 1950, the 1950 ordinance was approved by a majority of the electors of the city voting thereon.

During the period November 15, 1949, through November 14, 1950, the petitioner collected from its customers under bond approximately $2,114,000, such collections representing the difference between the rates in effect prior to November 15, 1949, and the rates fixed by the 1949 ordinance. Such collections were made from approximately 131,-

---

[1] Similar provisions were made for refunds to other classifications of users.

000 customers and were properly included by the petitioner in its gross income as reported for the years 1949 and 1950.

On February 3, 1951, the stipulation prescribed by the 1950 ordinance was signed by counsel for the petitioner and for the City, which stipulation was filed with the commission.

On February 7, 1951, the commission issued its order in accordance with the stipulation. In its order the commission found that the 1950 ordinance was duly enacted and published, assented to by the petitioner and approved by a majority of the voters, and was in full force and effect; that the ordinance fixed the maximum rates to be charged for the period of 2 years beginning November 15, 1950, and for certain periods thereafter as specified; that the 1950 ordinance repealed the 1949 ordinance from which the company had appealed; that the rates fixed by the 1950 ordinance for the period November 15, 1949, to November 14, 1950, were just and reasonable and should be substituted for that period for the rates contained in the 1949 ordinance; that the company should within 1 year from the date of the order make refunds to its Columbus customers in accordance with the stipulation; that the company's appeal should be terminated by the order and that the company had been charging since November 15, 1950, the rates prescribed in the 1950 ordinance.

The commission accordingly ordered that the rates fixed by the 1950 ordinance for the period November 15, 1949, to November 14, 1950, be substituted for the rates in the 1949 ordinance appealed from; that the company within 1 year refund to its customers a sum equal to the excess of the amounts billed to them between those dates over the amounts payable by them under the rates specified in the 1950 ordinance; that the company's bond filed in the proceeding be terminated; and that jurisdiction be reserved to the commission to supervise the making of the refunds and to make such refunding audits as may be proper.

After the order of the utilities commission issued February 7, 1951, petitioner made rate differential refunds to approximately 131,000 customers in the aggregate amount of $1,082,019.48.

The parties agree that the petitioner is entitled to a deduction for the rate differential refunds in the amount of $1,082,019.48 in either the year 1950 as determined by respondent or the year 1951 as claimed by petitioner, depending upon the year in which the obligation to make such refunds accrued for Federal income tax purposes.

The petitioner claimed the deduction on its 1951 return, and contends that the liability for the refunds did not accrue until 1951 since the litigation concerning the rates effective for the period 1949 to 1950 in which the overcollections were made was not terminated until the commission's order of February 7, 1951, was issued and 30 days passed thereafter without the filing of an application for rehearing.

The respondent determined that the liability accrued in 1950, saying that at the end of that year the petitioner had obligated itself to pay a definitely ascertainable amount, which amount and obligation were not unsettled, and that when the electors approved the 1950 ordinance which had previously been accepted by the company there was a binding contract between the City and the company settling their dispute over the rates and amounts refundable.

Under the applicable Ohio statutes a municipality by ordinance may fix the rates chargeable by a public utility within the municipality.[2]

In *Ohio River Power Co.* v. *City of Steubenville*, 99 Ohio St. 421, 124 N. E. 246 (1919), the City had by ordinance fixed rates for 10 years and the company had accepted the ordinance. The utility within the 10-year period attempted to increase the rates and the City sought to enjoin the increases. The court said:

Section 3982 does not contemplate a contract. On the contrary, it grants arbitrary power to the council to fix rates from time to time, regardless of the consent of the utility; but section 3983 provides, in terms, that when an ordinance has been passed fixing the rate for electric current for lighting the streets, or other purposes, for a definite term not exceeding ten years, and written acceptance has been filed by the company in the office of the auditor or clerk of the corporation, the power granted to council by section 3982 shall be suspended during the term named in the ordinance.

The provisions of section 3983 are not merely incident to the power granted in section 3982, but confer specific authority upon the council of any municipality to fix rates for a period not exceeding ten years by contract with the utility furnishing electric current for light, or for other purposes.

This is a distinct and different method than the method of fixing rates from time to time by the exercise of the arbitrary power conferred by section 3982, regardless of the assent of the utility.

Where the ordinance is accepted by the utility and approved by the electors the commission has no jurisdiction unless a certain percentage of the electors complain to it. However, when the utility is not satisfied with the prescribed rates it may complain to the commission which then acquires jurisdiction[3] to determine rates that are reasonable.[4]

Upon appealing to the commission, the utility may continue to

---

[2] Constitution of the State of Ohio, art. XVIII, secs. 3 and 4; section 3982 of the Ohio General Code authorizes the council of a municipality to regulate from time to time the price a public utility may charge within the municipality. Section 3983 provides that where the council has fixed prices for a period not exceeding 10 years and the utility has accepted the prices, the council may not require the utility to furnish service at a lower price within that period.

[3] Ohio General Code Ann. (Page), sec. 614–44.

Any municipal corporation in which any public utility is established may, by ordinance, at any time within one year before the expiration of any contract entered into under the provisions of sections 3644, 3982, and 3983 of the General Code between the municipality and such public utility with respect to the rate * * * to be * * * collected, * * * for any commodity, utility or service by such public utility, or at any other time authorized by law proceed to fix the * * * rate, * * * that such public utility may * * * collect therefor for an ensuing period as provided in sections 3644, 3982 and 3983 of the General Code.

Written complaint; hearing. Thereupon the commission, upon complaint in writing, of

charge the prior effective rates provided it gives bond to the State for benefit of the consumers to refund the amounts collected in excess of the "amount which shall finally be determined it was authorized to collect." The commission is to make all necessary orders as to the manner of making refunds.[5]

⸱ The City of Columbus enacted the 1949 and 1950 ordinances pursuant to section 192 of the charter of the City, which provides, in part:

The council may by ordinance grant permission to any individual, company or corporation to construct and operate a public utility in the streets and public grounds of the city * * * It shall prescribe in the ordinance the kind and quality of service or product to be furnished, and shall provide for fixing the rate or rates to be charged therefor, ⸱* * * except and provided, however, that no * * * change in rates, shall become operative until it shall have been sub⸱ mitted to the vote of the electors of the city and approved by a majority of those voting thereon.

The petitioner appealed from the 1949 ordinance and the commission proceeded to hear evidence and received various exhibits, including inventories of the petitioner's properties. The city council in enacting the 1950 ordinance proposed to settle the controversy with the petitioner by providing rates for the period from and after November 15, 1950, which were higher than those in the 1949 ordinance but lower than those in effect prior to November 15, 1949. The petitioner accepted the 1950 ordinance and from and after November 15, 1950, collected at the rates there prescribed. In the same ordinance the

such public utilities, or upon complaint of one per centum of the electors of such municipal corporation, which complaints shall be filed within sixty days after the passage of such ordinance, shall give thirty days' notice of the filing and pendency of such complaint to the public utility and the mayor of such municipality, of the time and place of the hearing thereof, and which shall plainly state the matters and things complained of.

[4] Sec. 614–46.

If the commission, after such hearing, shall be of the opinion that the rate, * ⸱* * so fixed by ordinance is or will be unjust or unreasonable, or insufficient to yield reasonable compensation for the service, the commission shall, with due regard to the value of all the property of the public utility, actually used and useful for the convenience of the public, * * * and such other matters as may be proper, according to the facts in each case, fix and determine the just and reasonable rate, * * * to be * * * collected by such public utility, during the period so fixed by ordinance which shall not be less than two years, and order the same substituted for the rate, * * * so fixed by ordinance or the commission may find and declare that the rate, * * * so fixed by ordinance, is just and reasonable, and ratify and confirm the same.

[5] Sec. 614–45.

No such complaint or appeal to the commission shall suspend, vacate, or set aside the rate, * * * by ordinance unless such public utility shall elect to charge the rate, * * * in force and effect immediately prior to the taking effect of the regulation complained of and appealed from and shall give an undertaking in such amount as the commission shall determine. The undertaking shall be filed with the commission and shall be payable to the state of Ohio for the use and benefit of the consumers affected by the regulation in question. The condition of the undertaking shall be that such public utility shall refund to each of its consumers, public or private, the amount collected by it in excess of the amount which shall finally be determined it was authorized to collect from such consumers. The commission shall make all necessary orders in respect to the form of⸱ such undertaking and the manner of making such refunds. Such complaint or appeal to the commission shall suspend, vacate and set aside all the provisions of the ordinance complained of and appealed from excepting the rate, price, charge, toll or rental fixed thereby.

city council provided a new schedule of rates for the period November 15, 1949, to November 14, 1950, which were acceptable to the petitioner, to be substituted for the rates in controversy. Recognizing that the dispute as to that period was subject to the jurisdiction of the utilities commission, the ordinance authorized the city attorney to enter into a stipulation requesting and authorizing the commission to approve these rates, substitute them for the disputed rates, and order refunds to be made accordingly. The petitioner agreed to this, and the voters approved in 1950. Thus at the end of 1950 the petitioner had agreed to the entry of an order directing it to refund $1,082,019.48 of the $2,114,000 it had collected under bond and included in income.

An expense accrues when all the events have occurred which fix its amount and determine that it is to be incurred by the taxpayer. *United States* v. *Anderson*, 269 U. S. 422 (1926). Where an item depends upon a contingency or future events, it may not be accrued until the contingency or events have occurred and fixed with reasonable certainty the fact and amount of the liability. *United States* v. *Safety Car Heating Co.*, 297 U. S. 88 (1936); *Lucas* v. *American Code Co.*, 280 U. S. 445 (1930). Where liability is substantially in controversy, accrual must await the resolution of the controversy. *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281 (1944); *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516 (1944); *Atlantic Coast Line Railroad Co.*, 4 T. C. 140 (1944). The petitioner contends that the issue of the rates to be applied was still in controversy at the end of 1950 and until the commission acted in 1951.

In *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290 (1932), it was held that a taxpayer on an accrual basis should have accrued as income in 1920 an amount awarded and received in 1923 pursuant to the Transportation Act of 1920, the right to payment having ripened when the Act became law and the amount being ascertainable within reasonable limits from the data in the taxpayer's books and the calculations required by the statute, the action of the Interstate Commerce Commission in determining the amount and ordering payment of the award being deemed mere administrative procedure.

In *Helvering* v. *Russian Finance & Construction Corporation*, 77 F. 2d 324 (C. A. 2, 1935), the taxpayer agreed to purchase 600,000 tons of ore and to pay a royalty of $2 per ton at the expiration of 10 years. It would be discharged of this liability on certain conditions. It claimed a deduction of $1,200,000 on account of this liability. The court observed:

The liability to pay $2 by this taxpayer arose upon the delivery of the ore, and, in every sense, was properly an accruable item of expense. It was absolute and fixed, in that no further event needed to occur to bring it into existence. It was, however, possible that the expense might never be actually incurred. The oc-

currence of any one of three contingencies would relieve the taxpayer from the liability he incurred upon delivery of the ore. But the taxpayer had a reasonable expectancy at the time it accrued this liability on its books that its liability would be enforced. * * * The possibility that a present liability may subsequently be discharged by some condition subsequent does not prevent its accrual on the taxpayer's books. The test is whether a taxpayer is justified in entertaining a reasonable expectation that an expense will be incurred. The taxpayer's liability became fixed upon delivery of the ore, and there then existed reasonable grounds to justify the taxpayer in believing that it would ultimately have to pay the $1,200,000. A presently existing obligation, which the taxpayer has reasonable grounds to believe must eventually be fulfilled, is not uncertain or contingent in the sense that it may not be accrued.

In *New Hampshire Fire Insurance Co.*, 2 T. C. 708 (1943), affirmed on other issues 146 F. 2d 697 (C. A. 1, 1945), premiums collected by the taxpayer and others in excess of authorized rates in Missouri were impounded during litigation over the rates. As of the end of 1935 when the litigation had ended, the taxpayer accrued $60,000 as estimated income to be recovered and $25,000 as estimated expenses and commissions incident to such recovery, although a final order of the court was not entered until the following February. We held that the taxpayer, on an accrual basis, was justified in believing in 1935 that it was entitled to this part of the impounded premiums and chargeable with this amount of expense and that the subsequent actions of the court were formalities and had no vital bearing on the basic decree releasing the funds.

In *Kenyon Instrument Co.*, 16 T. C. 732 (1951), the taxpayer, on an accrual basis, agreed with the Navy Department in 1943 to refund in 1943 and 1944 certain overcharges on work done in 1942. We held that the entire amount was accruable and deductible in 1943 as of the time of the agreement, rather than part in 1943 and part in 1944 as paid. We there said, "It cannot be seriously argued that the petitioner's liability for the full amount was unsettled in 1943. There is a certain quantum of reasonableness implied in the term 'unsettled.' " We said also, "the answer to the test of whether or not an item should be properly accrued by the taxpayer depends inevitably upon the reasonableness of the possibility that it will eventually be paid."

Certainly the petitioner here had a reasonable expectancy at the end of 1950 that it would be required to refund $1,082,019.48 to its customers. It had agreed to do this and actual payment awaited only the filing of the stipulation and the order of the utilities commission. The petitioner had agreed to the filing of the stipulation. Although the commission still had jurisdiction of the appeal from the 1949 ordinance, the possibility that it would disturb the rate agreement between the petitioner and the City expressed in the 1950 ordinance, which had been confirmed in that year by the electors, was

too remote to preclude the accrual in 1950 of the refunds which would result under the settlement agreed to by the parties.

We hold that the amount to be refunded was accruable and deductible in 1950.

*Decision will be entered for the respondent.*