CHARLES S. GUGGENHEIMER AND MINNIE S. GUGGENHEIMER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8813. Promulgated April 9, 1947.

*Edgar J. Goodrich, Esq., Lipman Redman, Esq.,* and *Edward First, Esq.,* for the petitioners.

*Ellyne E. Strickland, Esq.,* for the respondent.

OPINION.

JOHNSON, *Judge*: Petitioner assails the Commissioner's disallowance of $38,927.91 claimed as a bad debt deduction on his 1940 income tax return. He contends that the amount represents the ascertained worthlessness of debts created by his advances to the partnership, or, in the alternative, that it is deductible as a loss under section 23 (e) (2), Internal Revenue Code.

Petitioner, his brother Randolph Guggenheimer, and his sister Adele G. Lewisohn, having acquired securities and improved real estate under the will of their mother, held and operated these properties under the form of a partnership in which each held a one-third participating interest. Petitioner had charge of the properties during his mother's lifetime, and after her death in 1927 he continued to act as manager, with the assent and knowledge of his brother and sister. The latter had ready access to the records kept as a joint account, but in fact never examined them. The real estate consisted of a large rented building on Broadway, another on Lexington Avenue, a residence on Fifth Avenue, New York, and a beach cottage with adjoining lots at Drexel, New Jersey. The city properties were encumbered with mortgages aggregating about $1,340,000. They were profitably rented when acquired, but after 1929 the economic depression caused a rapid decline in their rents and market value, and current income was often insufficient to cover interest, expenses, and carrying charges.

As a consequence petitioner was repeatedly obliged to advance funds— on some occasions as much as $25,000 at a time. These advances were credited to him on his account with the partnership and were charged equally against the three partners. In 1930 petitioner sold the Broadway building, but the purchaser turned it back the next year, and petitioner thereafter formed two corporations which held title to that and the Lexington Avenue building, respectively, while the partnership held all the shares. The Broadway building was lost by foreclosure in 1936, and the Lexington Avenue building in 1944. Petitioner individually purchased the Fifth Avenue residence in 1937, selling it in 1945 at a loss of $100,000. Despite petitioner's efforts and constant advances of funds, the net worth of the partnership's assets steadily declined, so that by the end of 1939, or shortly before petitioner's settlement agreement with his brother and sister, the books indicated insolvency. But as petitioner had made advances which were credited to him, his account showed a credit balance, while those of his brother and sister indicated large deficits.

In seeking to deduct the $38,927.91 as a bad debt, the petitioner does not allege any total of unpaid loans or advances due to him from the partnership, but presents rather the result of a general accounting computation in which his unitemized advances are reflected together with all other partnership receipts and disbursements from the beginning. The $86,203.72 appearing in the joint account as his credit balance can not, therefore, be deemed to represent specifically debts or advances, but reflects rather his computed share of the partnership assets or liabilities. Since the establishment of a bona fide debt, certain in amount, is a prerequisite to the deduction sought, *Milton Bradley Co.* v. *United States*, 146 Fed. (2d) 541; *J. S. Cullinan*, 19 B. T. A. 930, petitioner has failed to meet a required burden of proof. It is true, however, that the same computation indicated that petitioner's brother owed the partnership $17,439.50 and that his sister owed it $160,628.90, and it might be inferred that these large deficits resulted from attributing to the brother and sister proportionate liability for petitioner's unspecified advances, which exceed the total of petitioner's credit balance. We are not disposed to make this inference, but, even if we were, petitioner would be in no stronger position. While true that, under New York law, a partnership must indemnify a partner for payments personally made by him for the conduct of its business or the preservation of its property, McKenney's Consolidated Laws of New York, vol. 38, sec. 40, such partner's right of action accrues only by virtue of an accounting or final settlement in which the partnership's indebtedness to him is recognized, *Knapp* v. *First Nat. Bank & Trust Co.*, 154 Fed. (2d) 395; *Herrick* v. *Guild*, 257 App. Div. 341;

13 N. Y. S. (2d) 115; *Lasky* v. *Coverdale*, 84 Misc. 34; 145 N. Y. S. 994; *Vickery* v. *Stemm*, 140 N. Y. S. 1007. Here the brother and sister affirmatively contested any such liability, alleging that petitioner had made decisions and loaned and used funds in substantial amounts without consulting them, and they refused to pay the liabilities with which they were charged or to recognize as correct the amount which appeared to petitioner's credit on the books. It is not necessary and on the record it is not possible for this Court to decide the question of their liability. For present purposes it is sufficient that the contention was made and is at least colorable. Under petitioner's management the interest of the other two partners was converted into a substantial liability, which apparently had been increasing over the years. Petitioner had, therefore, not a recognized, bona fide debt for collection, but rather a disputed claim, and his failure to collect the full amount of that claim does not support a bad debt deduction. *Milton Bradley Co.* v. *United States, supra; Howell* v. *Commissioner*, 69 Fed. (2d) 447; certiorari denied, 292 U. S. 654; *Park* v. *Commissioner*, 58 Fed. (2d) 965; certiorari denied, 287 U. S. 645.

Petitioner's alternative contention is based on section 23 (e), Internal Revenue Code, which permits the deduction of losses incurred in trade or business or in any transaction entered into for profit, though not connected with trade or business. The partnership was engaged in the business of renting and conserving property, and, as managing partner, petitioner devoted his time and attention to that business, and risked in it the property acquired from his mother and the funds advanced by him individually. He testified, and we are convinced, that he made the advances to hold and conserve the properties in the expectation that they would increase in value. He was disappointed in that expectation, it is true, but he and his brother testified, and we have no reason to doubt, that the books were accurately kept as to amounts, and that the brother and sister felt aggrieved by reason of his error in judgment.

Respondent suggests that in making a settlement whereby the brother and sister were relieved of their indicated indebtedness to the partnership and together received about one-half of the remaining assets, petitioner was acting generously with members of his family and is to be treated as "forgiving" the debt. From the testimony and the background of the settlement, we are not convinced that this was so. As managing partner, petitioner acted with great independence and, although the partnership regularly sustained losses after 1930, petitioner never called on the other partners for a settlement or a contribution and, as they never examined the books, they inferentially did not know of the liabilities accumulating against

them. Under their mother's will, petitioner's brother and sister had received property of great value and as result of petitioner's management over the years losses had wiped out their entire interests, leaving each of them with substantial deficits to pay, which they refused to do and disputed the correctness of petitioner's claim. It is not unreasonable to suppose that they expected distribution of some property upon a liquidation of assets, or that a court of equity under the circumstances shown might have sustained their claim. We are of opinion, therefore, that the motive which prompted petitioner to make the settlement was not a forgiveness of the debt or a generosity to his relatives, but because he believed that it was to his best financial interest to do so, as he could not hope to receive any larger amount without litigation, and as a lawyer he knew that this might be prolonged, the result fraught with uncertainty, and a court judgment, if any, of doubtful value. By the settlement he relinquished a claim against the partnership for which the brother and sister were ostensibly liable to make contributions, and he sustained a loss which is measured by the difference between the value of his share of partnership assets as shown by the books and the value of what he received as a result of the settlement.

In so holding, we assume that petitioner's advances exceeded the amount of the claimed loss of $38,927.91, despite the lack of precise evidence on this point. But such assumption seems abundantly supported by the magnitude of the other partners' liabilities, by petitioner's testimony that on two occasions he made advances of $25,000 each, and by the fact that, after he had furnished carrying and operating expenses during years of successive losses, the partnership's book liabilities were substantially in excess of the value of its assets. On this background the partnership had no net assets to liquidate, and, hence, those which petitioner received are not to be regarded as a liquidating distribution, but rather as given in reimbursement of his advances. These advances were, we believe, made by him primarily for the purpose of operating and conserving property used in a trade or business, and, to the extent that he failed to make recovery, he sustained a deductible loss in the year of settlement.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, did not participate in the consideration of or decision in this report.

VAN FOSSAN, LEECH, ARNOLD, and KERN, *JJ.*, concur only in the result.