OPINION. Abundell, Judge: The facts as we have found them, and they are not seriously in dispute, disclose that the partnership suffered losses during the years 1937,1938, and 1939 from the operation of the partnership and from trading in securities on its own account. Under the partnership agreement then in effect, each of the junior partners was chargeable with 5 per cent of such losses. As neither of the junior partners had contributed any capital to the business, the partnership books carried no capital accounts in their names and in order to reflect their share of the losses accounts were opened on the books in which appropriate “debit balances” were recorded. Thereafter, the junior partners were indebted to the partnership and/or the senior partners in the amount of the “debit balances” which were reduced from time to time by the application thereto of portions of the junior partners’ shares of the profits of the business. In 1944, the senior partners, because of the complaints of the junior partners as to the heavy'burden and the unfairness of having to repay the 1937-1939 losses from current earnings, and apparently to discourage the junior partners from leaving the business, entered into a compromise with the junior partners even though it appeared that the partnership could enforce a collection of the full amount owing from the junior partners. The services of the junior partners as “customers’ men” were invaluable to the partnership and it was clear that the business would suffer materially if they were to leave and take their customer following with them. It was this latter consideration which primarily prompted the senior partners to enter into the compromise. Petitioners now contend that the net amount of the indebtedness owing by the junior partners which was charged off in 1944 as a result of the compromise was deductible in that year as ordinary and necessary business expense under section 23 (a) (1) (A); as nonbusiness expense under section 23 (a) (2); or as a loss under either section 23 (e) (1) or 23 (e) (2) of the Internal Eevenue Code. On their income tax returns for 1944 petitioners claimed the amounts charged off as bad debt deductions. The petitioners have brought to our attention a number of cases involving somewhat comparable facts wherein deductions have been allowed under the statutes upon which they rely but none of the cited cases can be regarded as controlling of the issue herein. For example, petitioners place considerable emphasis upon our recent decision in Lab Estates, Inc., 13 T. C. 811, wherein unpaid rents for the taxable year and prior years were forgiven by the taxpayer in order to retain the tenants. We there held that the rents forgiven were deductible as ordinary and necessary business expense under section 23 (a) (1) (A) or as business losses within the meaning of section 23 (f). To distinguish the present case we need go no farther than to point out that the taxpayer in Lab Estates, Inc., supra, was dealing upon a strict debtor-creditor basis with an outside party, whereas we are here concerned with a compromise between partners within the firm carried out by means of a reallocation or readjustment of partnership interests. The situation here is somewhat unique. The two senior partners contributed all the capital to the business and the junior partners agreed to contribute their services and customer contacts with the understanding that they would have a 5 per cent interest in the profits and losses. The junior partners’ failure to make good their share of the losses sustained from 1937 to 1939 impaired the working capital of the business although apparently not to such an extent that it was necessary for the partnership to obtain additional contributions of capital from the senior partners or outsiders in order to continue the business. The record would indicate that no reduction was made in the capital accounts of the seniors prior to 1944 to reflect that portion of the 1937-1939 losses for which the juniors were responsible under the partnership agreement. Under the compromise agreement entered into in 1944, the senior partners released each of the junior partners from the obligation to repay his share of the 1937-1939 losses in consideration of $500 paid by one, and $1,000 paid by the other junior partner, plus the relinquishment of the 5 per cent interest of each junior partner in the trading account entitled “A. L. Stamm & Co. December 31,1939 Accounts in Liquidation.” Thereafter, the amount of the indebtedness owing from the junior partners which was charged off as a result of the compromise was not treated as a current operating expense or as a loss of the partnership in 1944 but was handled as a capital transaction between the partners, which was reflected on the partnership books by appropriate reductions in the capital accounts of the senior partners. Had the partnership been terminated and liquidated incident to the compromise, it may well be that the difference between the total amount recovered from the junior partners and the amount of the indebtedness would have been deductible by the senior partners insofar as it resulted in a loss of their original investments of capital. However, the compromise did not entail a liquidation of the partnership or the disposition of the interest of any partner. It was a capital transaction and its net effect was to enlarge the partnership interests of the senior partners and to reduce the partnership interests of the junior partners. Moreover, the fluctuation of the firm’s equity in the trading account from a value of $27,378.22 on December 12, 1944, to a value of $60,656.35 on December 29, 1944, is evidence that whether the petitioners would ultimately suffer a loss in their capital investments from the readjustment of partnership interests could not be known until an identifiable event occurred in connection with the partnership interests which would serve to register their gain or loss. Such an event would be the liquidation of the partnership as was present in Charles S. Guggenheimer, 8 T. C. 789, or the sale or other disposition of the partnership interest of either senior partner. The deduction claimed by petitioners, in our opinion, cannot be characterized as an ordinary and necessary business or nonbusiness expense of the partnership or the petitioners; nor were the amounts in controversy intended as additional compensation to the junior partners for services rendered the business in prior years or during the taxable year. On the contrary, the compromise was carried out with the hope that the juniors once relieved of the burden of their debts would remain with the business in the future. The compromise having been effectuated by means of a readjustment of the partnership interests between the partners, it follows that the determination of the ultimate gain or loss to the petitioners therefrom must be postponed until such time as the partnership is liquidated or their partnership interests are otherwise disposed of and their capital accounts closed out. The respondent’s determination that the amounts in controversy are not deductible by the petitioners in 1944 as ordinary and necessary business or nonbusiness expense under sections 23 (a) (1) (A) and 23 (a) (2), respectively, or as losses under sections 23 (e) (1) and 23 (e) (2) is, therefore, sustained. Decision will be entered wnder Bule 50.