Henry Protzmann and Estate of Helga K. Protzmann, Deceased, Henry Protzmann, Executor v. Commissioner.
Protzmann v. Comm'r
Docket No. 56428. United States Tax Court
T.C. Memo 1959-105; 1959 Tax Ct. Memo LEXIS 141; 18 T.C.M. (CCH) 462; T.C.M. (RIA) 59105; May 25, 1959
Robert S. Jones, Esq., for the petitioner. Raymond T. Mahon, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in the income tax of Henry and Helga K. Protzmann *142 for the year 1948 in the amount of $23,446.26, resulting from his disallowance of a deduction taken by them in their return for that year in the amount of $38,370.51 on account of a "Loss on brewing venture." Respondent determined that this "Loss on brewing venture" was "a nonbusiness bad debt as provided in section 23(k)(4) of the Internal Revenue Code of 1939 to the extent of $35,991.25, and limited in the taxable year to a deduction of $1,000.00 as a short-term capital loss under section 117 of the Internal Revenue Code of 1939." By reason of such disallowance and the allowance of a capital loss in the amount of $1,000, the net adjustment made in the taxpayers' net income was an increase of $37,370.51. It is alleged in the petition that a loss in the amount of $35,991.25 was deductible under section 23(e) of the Internal Revenue Code of 1939 either as a loss from a transaction entered into for profit or as a loss resulting from Henry's trade or business. At the trial and on brief it was also contended in the alternative that the item in question was deductible as a business bad debt under section 23(k)(1). Neither petitioners nor respondent have filed reply briefs herein although *143 March 18, 1959, was the date fixed for the filing of such reply briefs. Findings of Fact The parties have filed herein a stipulation of facts. We find the facts to be as stipulated and incorporate herein by this reference the stipulation and the exhibits attached thereto. During 1948 Henry and Helga K. Protzmann lived in Holyoke, Massachusetts. They filed a joint income tax return for that year with the then collector of internal revenue for the district of Massachusetts. Helga died in 1953 and Henry is executor of her estate. He will be referred to sometimes hereafter as "petitioner." Petitioner, who was a certified public accountant, was employed in 1933 by the Harvard Brewing Company of Lowell, Massachusetts, as its treasurer. He resigned that position in 1936 when he organized a corporation which engaged, under his management, in the wholesale distribution of wines, beer, pop, and liquors. He liquidated this business in 1939 and was re-employed by the Harvard Brewing Company as vice president in charge of sales. He resigned this position in 1945 and became a consultant on a fee basis to two corporations which were being reorganized. During that year petitioner made investigations *144 concerning the possibility of acquiring a brewery enterprise "to improve it and make some money." After looking at three other brewery operations, petitioner decided to acquire the brewery business carried on by the Dover Brewing Company of Hartford, Connecticut, and its stockholders. These were at that time Edward F. Sullivan and the administratrix (and widow) of Anthony Zazzaro who were also associated in unincorporated enterprises known as Bellevue Associates and Dover Sales Company. As Bellevue Associates they owned bottling equipment and leased a building contiguous to the brewery, in which the equipment was located. As Dover Sales Company they leased another building contiguous to the brewery which was owned by Dover Brewing Company, hereinafter sometimes referred to as "Dover." Dover Sales Company has made certain leasehold improvements in this latter building. In the latter part of 1945 petitioner began negotiations with Sullivan and the administratrix (and widow) of Zazzaro looking to the acquisition of their interests in Dover and the other enterprises, and on December 29, 1945, entered into an agreement whereby he acquired an option to purchase the stock of Dover, the *145 bottling equipment, and the leaseholds of Sullivan and Zazzaro. This agreement, in pertinent parts, was as follows: "WHEREAS, the Sellers are the owners of a majority of the issued and outstanding common stock of Dover Brewing Company, a Delaware corporation having its place of business in said Town of Hartford (hereinafter called the 'Brewery') and jointly own as individuals bottling equipment and accessories used by the Brewery in its manufacturing operations; and "WHEREAS, the Sellers own a business conducted under the firm name and style of Dover Sales Company (hereinafter called the 'Distributor') which distributes the products of the Brewery; and "WHEREAS, the Sellers wish to dispose of, and said Buyer desires to purchase, the Sellers' interest in the Dover Brewing Company and the equipment owned by them and used by the Brewery, and both parties wish to terminate the distribution of the products of the Brewery by the Seller. "NOW, THEREFORE: "In consideration of the sum of Five Thousand (5,000) Dollars paid by the said Henry Protzmann, Buyer, to the said Edward F. Sullivan and Theresa M. Zazzaro, Sellers as aforesaid, (the receipt of which is hereby acknowledged) and *146 in further consideration of the covenants and agreements herein made and the representations herein contained which are material to this agreement and are a consideration for its execution, it is agreed that "1. On or before December 31, 1945 the Buyer shall pay to the Sellers the further sum of Twenty Thousand (20,000) Dollars upon receipt of which the Sellers shall "(a) Execute and deliver to the buyer a bill of sale of all the property and equipment listed on Exhibit A, attached hereto, free and clear of any liens or claims of any nature, subject, however, to the restriction that the buyer will not sell this property and equipment other than to the Dover Brewing Co. during the life of this agreement and the notes given hereunder without written consent of the Sellers. In the event of default on the notes the sellers agree to repurchase this equipment and property upon the payment of the sum of $15,000 if the same has not been sold and transferred to the Dover Brewing Co. "(b) Cause the Buyer and his nominees to be elected to the Board of Directors of the Brewery so that they shall constitute a majority of the Board of Directors and cause to be presented to the Brewery resignations *147 of the present directors and officers of the corporation so as to permit the new Board of Directors to fill such vacancies. "2. Simultaneously with the payment mentioned in the foregoing paragraph the Buyer shall execute and deliver to the Sellers his promissory notes in the sum of One Hundred Thousand Eight Hundred Fifty-one (100,851) Dollars being the balance due for the purchase of one hundred ten thousand eight hundred fifty-one (110,851) shares of the common stock of Dover Brewing Company at One (1) Dollar per share, which notes shall each be payable with interest at the rate of three per cent (3%) per annum, (with the right to anticipate payment of any of said notes before maturity) as follows: "Twenty Thousand (20,000) Dollars May 1, 1946 Thirty Thousand (30,000) Dollars November 1, 1946 Thirty Thousand (30,000) Dollars May 1, 1947 Twenty Thousand Eight Hundred Fifty-one (20,851) Dollars November 1, 1947 with the proviso that in the event of default in the payment of any note when due all other notes thereafter due shall forthwith become due and payable upon demand. "3. Simultaneously with the payments mentioned the Sellers shall cause said shares to be transferred *148 on the books of the Brewery in the name of Henry Protzmann who shall deliver the same, properly endorsed, to the Sellers as security for the payment of said notes. The number of shares of stock which shall be retained by the Sellers as collateral shall, until final payment, be in the number of shares, figured at One (1) Dollar per share, sufficient to exceed the total indebtedness for all notes by Ten Thousand (10,000) Dollars and all surplus shares will be returned to the Buyer as payments are made by the Buyer as herein provided. * * *
"6. It is further mutually agreed between the parties hereto that in the event the buyer shall find upon completion of the independent audit of the Dover Brewing Co. for the period to December 31, 1945 any liabilities, contingent or otherwise, which may interfere or delay completion of this agreement or lessen the net worth by more than $10,000, then in that event upon written notice to the sellers of said facts, the buyer may request: "(a) the return of the deposit and payments made hereunder, or upon the notes, or "(b) the sellers to acknowledge payment on the unpaid notes, in an amount sufficient to adjust the difference in book value of *149 the shares purchased hereunder which result from said increased liabilities. "7. It is further mutually agreed that this agreement is entered into upon the representation of the sellers that "(a) the September 30, 1945 balance sheet of the Dover Brewing Co. (which is attached hereto and marked Exhibit B) is a true and correct balance sheet, and the indebtedness of the Dover Sales Company as reflected on said balance sheet is substantially correct, and "(b) the notes of the buyer executed and delivered under this agreement will not be discounted or transferred pending receipt of the independent audit of the Dover Brewing Co. for the period to December 31, 1945." Under date of February 7, 1946, Sullivan and the administratrix of Zazzaro conveyed to the petitioner by bill of sale the bottling equipment, and assigned to him their leasehold interest. Petitioner paid to Sullivan and the administratrix of Zazzaro the total amount of $45,000, including the amount of $20,000 on the note due May 1, 1946. Beginning January 1, 1946, and continuing until approximately June 4, 1947, petitioner was president and director of Dover. Petitioner leased the bottling equipment and subleased *150 the real estate upon which it was located to Dover. The rentals due thereunder to petitioner were not paid to him in cash, but were credited by Dover to petitioner's open account on Dover's books. In 1946 Dover sold the building leased by Dover Sales Company (which had ceased operations). Included in the sale were leasehold improvements owned by petitioner. The proceeds of the sale of those improvements were not paid to petitioner immediately in cash, but the amount thereof was also credited to his open account with Dover. From time to time petitioner advanced cash to Dover and the amounts due to him as a result of these advances were also credited to his open account. These advances were made and credits extended by petitioner to Dover in order to keep Dover going and with the hope that petitioner's investment in its stock would be profitable. In March 1946 petitioner was informed of certain liabilities of Dover which were not desclosed on its December 1945 balance sheet. The largest undisclosed liability was a tax claim by the Internal Revenue Service disclosed by a full audit. Negotiations started shortly thereafter in an attempt to determine the adjustment to be made in the *151 book value of Dover's stock as a result of the increased liabilities. After May 1, 1946, petitioner made no further payments under the agreement of December 29, 1945. His payment of the note due May 1, 1946, was made under protest. Protracted but unsuccessful negotiations were carried on with regard to an adjustment of the purchase price of the brewery enterprise between petitioner and his vendors. In May 1947 petitioner abandoned such negotiations and, pursuant to his alleged right of termination under the agreement of December 29, 1945, requested the return of all payments which he had made to Sullivan and the administratrix of Zazzaro. Thereupon petitioner's vendors contended that such payments to be returned to petitioner should be diminished by the amounts credited to his account by Dover on account of rent, compensation, and the sale of leasehold improvements. They also contended that they had an interest in the bottling equipment. This contention was countered by petitioner's claim that any such interest was subject to the payment to him of $15,000. In October 1946 petitioner gave Dover an option to purchase the bottling equipment for $30,000 on or before January 31, 1948, with *152 the proviso that "[in] the event the bottling equipment is purchased within the time specified, then 50% of the rental paid shall be applied to the purchase price." In July 1947 a petition was filed in the State court for the appointment of a receiver for Dover and William J. Burke was appointed receiver. The receiver wished to sell the brewery enterprise as an operating whole and therefore wanted to acquire the bottling equipment. In February 1948 petitioner filed a claim against Dover in the receivership proceeding in the amount of $38,491.25 based upon his open account with Dover. Dover was insolvent. In November 1948 a compromise and settlement agreement was entered into between petitioner, the receiver, and Sullivan, and the administratrix of Zazzaro. The terms of this agreement are reflected in the following recitations contained in the Receiver's Motion to Compromise Claims, Purchase and Sell Certain Personal Property and Pay Rent Claim Therefor filed in the State court on November 12, 1948: "1. Prior to receivership, certain bottling equipment, utilized by the Dover Brewing Company in its operations, was located in a building at 521 Windsor Street, Hartford, Connecticut, *153 contiguous to the brewery, and was rented by the Dover Brewing Company. "2. Said bottling equipment, prior to said receivership, was purchased from the New England Brewing Company by Edward Sullivan and the late Anthony P. Zazzaro, who comprised a partnership known as 'Bellevue Associates' which was located in a building rented from one New England Windsor Company, Incorporated. "3. Said equipment was leased to said Dover Brewing Company for the sum of One Thousand (1,000) Dollars per month and the Brewery leased the building in which it was located for Four Hundred (400) Dollars per month for a period of fifteen (15) years. "4. Thereafter, the said Sullivan and Zazzaro contracted with one Henry Protzman of Holyoke, Massachusetts for the sale of certain shares of Dover Brewing Company and in the same contract conveyed to him title to the bottling equipment and further agreed that in the event of default by the said Protzman of outstanding notes they would repurchase said equipment from Protzman for Fifteen Thousand (15,000) Dollars if said equipment had not been transferred to the Dover Brewing Company. "5. The Dover Brewing Company also had an option to purchase said equipment *154 from Protzman for Thirty Thousand (30,000) Dollars, which option was never exercised. "6. As between Protzman and the Estate of Anthony P. Zazzaro and Edward Sullivan there are various conflicting claims regarding the title to said bottling equipment. "7. Henry Protzman has filed a claim with your Receiver in the amount of Thirty-eight Thousand Four Hundred Ninety-one and 25/100 (38,491.25) Dollars which represents a balance due for compensation, money loaned, rent on leased equipment, as well as adjustments on other items over a period approximating eighteen (18) months ending in June 1947. "8. Your Receiver has disallowed said claim and it is the intention of the said Protzman to litigate said claim for the purpose of establishing the same as a claim against the receivership. "9. If said claim is litigated there will be a considerable expense to the receivership in legal and accounting fees which would result, even if the claim were not established, in a diminution of the assets of the receivership, and if the claim were established in whole or in part, in a further reduction of the net payment to individual creditors. "10. To litigate said claim would likewise result in *155 a considerable expense on the part of Protzman for said purpose, and its establishment might result in a net return to Protzman, in view of the expense to the receivership and himself in establishing it, of a very small amount of his claim. "11. The Receiver has no title to the bottling equipment aforesaid, but Protzman claims title thereto, and the Receiver has heretofore received an offer of Twelve Thousand Seven Hundred Fifty (12,750) Dollars for the same, which offer, as a result of negotiations with other parties, has been increased to Fourteen Thousand (14,000) Dollars, exclusive of commissions on the proposed sale, conditioned, however, upon the approval of the sale of additional equipment to the offeror as hereinafter prayed for in this petition. "12. As a result of negotiations by your Receiver the said Protzman is willing to convey his interest in said equipment and withdraw his claim against the receivership upon the payment to him by the Receiver of the sum of Three Thousand (3,000) Dollars. "13. In view of the foregoing the said Sullivan and the Estate of Anthony P. Zazzaro are likewise willing to transfer their interest in said bottling equipment to the Receiver *156 without payment therefor. "14. Your Receiver has received an offer from Louis Hertzberg of New York City of Nineteen Thousand Five Hundred (19,500) Dollars for said bottling equipment and certain other additional personal property, subject to a commission of 10% on the excess of Fourteen Thousand (14,000) Dollars to M. C. Wilkenfeld Co., Inc. of New York, and the total value of the additional property does not exceed Five Thousand (5,000) Dollars. "15. Said equipment is located on premises owned by the New England Windsor Company which claims Six Thousand (6,000) Dollars as rental of the premises occupied by it at the rate of Four Hundred (400) Dollars per month. "16. Your Receiver has negotiated with the New England Windsor Company, Incorporated concerning a compromise and as a result of said negotiations the said New England Windsor Company, Incorporated has agreed to accept Four Thousand Seven Hundred Fifty (4,750) Dollars and to make no effort to prevent the transfer of said equipment by the receiver to the prospective purchaser, once the receiver has received title thereto. "17. Your Receiver believes that the settlement aforesaid is for the benefit of said receivership *157 for the following reasons: "(a) It will save the receivership the legal, accounting and other expenses involved in contesting the Protzman claim and by eliminating that claim make available to creditors a larger ultimate yield from the receivership; "(b) By this transaction the Receiver is enabled, through the settlement of Protzman's claim for Three Thousand (3,000) Dollars, at the same time to acquire title to personal property which will be sold immediately for Fourteen Thousand (14,000) Dollars, subject to payment of the aforesaid rent claim of Four Thousand Seven Hundred Fifty (4,750) Dollars - all resulting in a net profit to the receivership of Six Thousand Two Hundred Fifty (6,250) Dollars and a substantial reduction of the general claims allowable - and to dispose of the remaining property now on said brewing premises at a price which is deemed fair and reasonable by your Receiver. "18. In agreeing to said proposal the said Protzman has conditioned its acceptance upon the completion of the transaction in the calendar year of 1948, as he feels that the only advantage to him is winding up his interest in the receivership within the current tax year. "19. This entire *158 agreement has been worked out by your Receiver as part of a general settlement between Protzman, Sullivan and the Estate of Anthony P. Zazzaro, each of whom has released the other from conflicting claims arising from the conduct of the Dover Brewing Company and each of whom as a part of this agreement withdraws all claims against the Brewing Company. The claims heretofore presented and to be withdrawn are the following: "Henry Protzman
$38,491.25
Estate of Anthony P.
Zazzaro
10,034.07
Frank Zazzaro
3,700.00
Edward Sullivan
2,200.00"
On November 19, 1948, the State court ordered the receiver to pay to petitioner "the sum of Three Thousand (3,000) Dollars in return for the withdrawal of his claim against said receivership and a bill of sale of his interest in [certain bottling equipment]." It is stipulated that "[as] a result of this settlement, petitioner's claim against the Dover Brewing Company in the amount of Thirty-eight Thousand Four Hundred Ninety-one Dollars and Twenty-five Cents ($38,491.25) was settled for $3,000." It is further stipulated that "[the] loss now claimed by the petitioner in the amount of Thirty-four Thousand Four Hundred *159 Ninety-one Dollars and Twenty-five Cents ($34,491.25) is the amount of net loss reported in the Report of Arthur H. Petlock, Internal Revenue Agent, dated November 14, 1950." [1]
In June 1947 petitioner was employed by the Hampden Brewing Company and served that company as treasurer, clerk, and geneneral manager from June 17, 1947, until May 19, 1955, at which latter time he severed his connection with that company. There was attached to the return of petitioner and his wife for the taxable year, in explanation of the deduction on account of "Loss on brewing venture," the following letter written to petitioner by his attorney: "In connection with the settlement which was effected under date of November 26, 1948 in connection with your claim against William J. Burke, Receiver of Dover Brewing Company, being case #80006, Superior Court, Hartford County, State of Connecticut, please be advised. "Under date of February 6, 1948 you filed a claim with the Receiver for $38,491.25 which represented a 'balance due for compensation, money loaned, rent on leased premises as well as adjustments on other items over a period approximating *160 18 months ending June 1947.' Your actual cash advances included in this claim were $38,333.50. "This claim was settled for the payment of $3000, plus your releasing and transferring any interest you might have in certain equipment located in the Brewery premises. "This claim arose as a result of your association with the Dover Brewing Company, the control of which was subject to a purchase and sale agreement with Edward F. Sullivan and Theresa M. Zazzaro dated December 29, 1945. "Under this agreement you were to have received capital stock in the Dover Brewing Company, certain bottling and other equipment used by the Dover Brewing Company, and certain interests in the leasehold improvement. "In view of the fact that the liabilities of the Dover Brewing Company exceeded the amount as represented under the agreement of December 29, 1945 you exercised your right of cancellation and were entitled to receive back the $45,000 which you had advanced under the agreement. This $45,000 was in addition to the money advanced by you which was reflected in your proof of claim filed with the Receiver. The seller claimed a credit of $43,500 on account of the purchase and sale agreement of *161 December 29, 1945 based upon the repayments you received which the seller contends were applicable to the accounting under the cancellation of the said agreement of December 39, 1945. In addition to the $38,333.50 which you advanced to the Dover Brewing Company you had expenses of $1,537.01, making the total money advanced by you in the Dover Brewing Company matter $39,870.51. "You received under order of the Court $3,000 which resulted in your loss being $36,870.51 exclusive of your loss of $1,500 on account of the settlement under the purchase and sale agreement of December 29, 1945. In making this settlement with the Court the figure of $3,000 was arrived at as being the estimated net distribution you would receive upon conclusion of the Receivership proceedings considering the expense which would be involved in the numerous matters of litigation connected with the proceeding. "Your total loss including the loss in connection with the settlement of the December 29, 1945 purchase and sale agreement, including your expenses was $38,370.51; of this loss $1,500 was the loss you experienced under the purchase and sale agreement of December 29, 1945. The loss which you suffered in *162 this matter should be reflected in your tax returns filed for the calendar year 1948, as it was during the year 1948 that the loss was determined." Opinion KERN, Judge: From December 1945 to June 1947 petitioner's primary business interest was that of a controlling stockholder and officer in a corporation conducting a brewery. Petitioner owned individually certain bottling equipment and was assignee of a lease covering property on which the equipment was located. He leased and subleased this equipment and property to the brewery corporation. His interest in this equipment and property was incidental and subordinate to his primary business interest in the corporation. In order to keep the corporation going and with the hope that his capital investment in its stock would become profitable he advanced money and extended credit to it, as a result of which the corporation became indebted to him on an open account. In July 1947 a receiver was appointed for the corporation. The corporation was insolvent [2] but the extent of its insolvency is not shown by the record. Petitioner filed a claim in the receivership proceedings in the amount of $38,491.25, which was based upon the indebtedness *163 of the corporation to him evidenced by the open account. By reason of the facts and agreements set forth in our findings (as to some of which the record is far from clear), this indebtedness of the corporation to petitioner was settled in 1948 for $3,000. As a result petitioner now claims the right to a deduction from his gross income of that year in the amount of $34,491.25. [3]
Petitioner contends that he is entitled to this deduction as loss from a transaction entered into for profit or as a loss resulting from his trade or business, under section 23(e)(2) or section 23(e)(1), Internal Revenue Code of 1939, or, in the alternative, as a business bad debt under section 23(k)(1). Respondent contends that this deduction is allowable only as a nonbusiness bad debt under the provisions and limitations of section 24(k)(4). The first question to be decided is whether the amount deducted is to be characterized as a loss or as *164 a bad debt. See Samuel Towers, 24 T.C. 199, 217, affd. 247 Fed. (2d) 233. Petitioner's erudite brief suggests that "we keep in mind Quixote's observation that not all men see things from the same point of view." We must see the transactions here involved in the light of the record before us. Viewed in this light, it appears to us that the amount deducted should be characterized as a bad debt rather than a loss. It is based upon advances and credits made by petitioner to his corporation, the net amount of which was shown to be a debt owed to petitioner by the corporation on open account. The amount of the debt never appears to have been questioned and no action by petitioner, such as an action for an accounting, was necessary to establish it as a debt. Cf. Charles S. Guggenheimer, 8 T.C. 789, relied upon by petitioner. The corporation-debtor being in receivership and insolvent, a claim was filed with the receiver predicated on indebtedness. This claim was originally disallowed by the receiver for no reason appearing of record, but eventually, according to the stipulation, "petitioner's claim * * * was settled for $3,000." Having concluded *165 that the deduction should be characterized as a bad debt rather than a loss, it is necessary to determine whether it is a business bad debt or a nonbusiness bad debt. Petitioner concedes that his business was not that of promoting, organizing, and financing corporations and also that the business of the corporation was not the business of petitioner as an officer and controlling stockholder. However, petitioner contends that his business was the operation of the brewery enterprise as a whole, including the rental to the corporation of his personally-owned bottling equipment and the sublease of the property on which such equipment was located, and that the debt of the corporation made up of his advances and credits was proximately related to such personal business in addition to and apart from the business of the corporation. We reject this argument since it is our opinion that petitioner's principal and primary business interest was that of an officer and controlling stockholder of the corporation and that his personal interests in the bottling equipment and the leasehold were incidental and subordinate thereto. In our view the advances and credits were made solely to assist the *166 corporation and protect his investment therein, and in no way to promote or advance his secondary personal interests as the owner of the bottling equipment. Cf. Tony Martin, 25 T.C. 94. We conclude that the deduction herein involved should be characterized as a nonbusiness bad debt and that respondent's determination was correct. Decision will be entered for the respondent. Footnotes
1. The record herein does not contain that report.↩
2. It is stipulated that "[in] February 1948 the petitioner filed a claim against the insolvent Dover Brewing Company * * *." ↩
3. The record does not explain (except as noted in our findings) why this amount should be $34,491.25 instead of $35,491.25.↩