John D. Talmage and Hope L. Talmage v. Commissioner.
Talmage v. Commissioner
Docket No. 5173-64.
United States Tax Court
T.C. Memo 1966-183; 1966 Tax Ct. Memo LEXIS 102; 25 T.C.M. (CCH) 948; T.C.M. (RIA) 66183; August 5, 1966
Vincent E. Cerow, for the petitioners. Paul H. Frankel, for the respondent. TANNENWALD
Memorandum Opinion TANNENWALD, Judge: Respondent determined a deficiency in the income tax of petitioners for the calendar year 1954 in the amount of $7,403.63. Petitioner has agreed to certain adjustments made by respondent. The sole issue for our decision is whether or not petitioners are entitled to a 1956 deduction of $12,069.28 as their share of an alleged "Loss on Settlement of former partners accounts." [1]
*103 Some of the facts are stipulated and are found accordingly. John D. Talmage and Hope L. Talmage are husband and wife residing in Brooklyn, New York. They filed joint Federal income tax returns for 1954 and 1956 on the cash basis with the district director of internal revenue, Brooklyn, New York. Any reference herein to "petitioner" shall be a reference to John, Hope being a party to this proceeding solely by having filed joint returns with John. Talmage & Co. (hereafter referred to as the "Partnership") was organized on October 14, 1950 as a partnership for the purpose of carrying on the stock brokerage business. Leslie G. Schoenhart (hereafter referred to as "Schoenhart") became a partner in 1953. Under the partnership agreement, the capital contributions and share of the net profits and losses were as follows: Share of
Capital
net profits
Partner
contribution
or losses
John D. Talmage
$50,000
60%
William S. Morris
10,000
20%
Leslie G. Schoenhart
5,000
20%
In the spring of 1956 a dispute arose between Schoenhart and the other two partners. On June 30, 1956, Schoenhart withdrew from the Partnership by mutual consent after having given *104 timely notice of his intention to withdraw. The parties have stipulated that on June 30, 1956 Shoenhart's combined personal and capital account reflected a debit balance of $26,092.37. This figure was arrived at from an analysis prepared by an auditor. After Schoenhart's withdrawal from the Partnership, the remaining partners requested payment of this amount. On September 17, 1957, petitioner, Morris, and Schoenhart confirmed in writing the withdrawal of the latter on June 30, 1956 by an agreement whereby Schoenhart agreed to pay $8,000 in settlement of the debit of $26,092.37 in his account. Pertinent parts of that settlement provided as follows: The parties hereto have completed an accounting of the business transacted by said partnership to and including June 30, 1956, and, from such accounting, it appears that Schoenhart is indebted to Talmage and Morris. Schoenhart desires to discharge his liability to said firm and Talmage and Morris, and has requested that Talmage and Morris accept in full payment thereof, the amount of $5,000.00 and his two promissory notes, one in the amount of $1,000.00, payable September 1, 1958, and one in the amount of $2,000.00 payable September 1, 1959, without *105 interest. Talmage and Morris have accepted such offer of settlement. NOW, THEREFORE, Talmage, Morris and Schoenhart hereby mutually agree: * * *
2. Talmage and Morris agree to accept the above payments in full payment of all claims that they may have against Schoenhart. 3. Talmage and Morris hereby release Schoenhart and Schoenhart hereby releases Talmage and Morris * * * from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts * * * which he ever had, now has or which his heirs, executors or administrators hereafter can, shall or may have, against the others or either of them * * *. [Emphasis added.] On July 2, 1956, the partnership agreement was amended to provide for the admittance of John E. Wadsworth as a partner without any consideration beyond this agreement to contribute $10,000 to the capital of the Partnership. The amendment recited that Schoenhart had withdrawn from the Partnership on June 30, 1956. The Partnership on its 1956 income tax return claimed a "Loss on Settlement of former partners accounts" of $16,092.37. This amount apparently was arrived at by subtracting the sum of $10,000 [2] *106 from the $26,092.37 alleged deficit in Schoenhart's account. Petitioner claimed $12,069.28, which was 75 percent of the loss alleged by the Partnership, as a loss on his 1956 return. Regardless of the characterization of the relationship between Schoenhart and the Partnership with respect to the debit balance, [3] the existence of a loss is the sine qua non of petitioner's case. Petitioner has failed to persuade us that a loss actually was sustained. The fact that the Partnership's books of account and the auditor's analysis (which the petitioner did not see fit to put in evidence) showed *107 a debit balance is not determinative. Doyle v. Mitchell Brothers Co., 247 U.S. 179, 186 (1918); Richardson v. Commissioner, 264 F. 2d 400, 403 (C.A. 4, 1959), affirming in part a Memorandum Opinion of this Court; Bennett E. Meyers, 21 T.C. 331, 334 (1953). Petitioner has satisfied us that, at the time of his withdrawal, Schoenhart did owe some amount to the Partnership because of the deficit in his account. Petitioner has not proven how much, if any, in excess of the $8,000 promised in the settlement Schoenhart in fact owed to the Partnership. The September 17, 1957 agreement merely states that "it appears that Schoenhart is indebted to Talmage and Morris." [Emphasis added.] That Wadsworth was admitted to the Partnership without any payment beyond his contribution to capital has little, if any, probative value. From the testimony, it is obvious that Schoenhart had certain claims against the Partnership, the precise nature of which was not disclosed. [4] The September 17, 1957 agreement states that "Talmage and Morris have accepted such offer of settlement." [Emphasis added.] And the stipulation of facts recites that "[after] prolonged *108 negotiations between Messrs. Talmage and Morris and Mr. Schoenhart, they agreed to settle their dispute." [Emphasis added.] Under these circumstances, we think tha the payment of $8,000 and the exchange of mutual releases, as a result of arm's-length negotiations and agreement, reflected a judgment by each side that it had received its quid pro quo. The Partnership was therefore not entitled to a deduction. Cf. Charles S. Guggenheimer, 8 T.C. 789 (1947). Even if it is assumed that Schoenhart in fact owned $26,092.37, the record discloses no more than a general belief on the part of Talmage and Morris that Schoenhart was unable to pay more than $8,000 by way of settlement. There is no proof as to the details of Schoenhart's financial position or that he had gone into bankruptcy or was otherwise insolvent. Mere failure to *109 pay upon demand is not sufficient. Prescott State Bank, 11 B.T.A. 147 (1928). There was some indication that Schoenhart borrowed the $8,000 but this standing alone is obviously of little or no help to petitioner. Certainly the record is far from convincing that the September 17, 1957 settlement represented any * more than an effort by Talmage and Morris to see how much juice they could squeeze from Schoenhart's turnip. [5]
Decision will be entered for the respondent. Footnotes
1. Although the loss was claimed for 1956, the deficiency is asserted for 1954 because any such loss would affect the computation of a net operating loss carryback from 1956 to 1954.↩
2. There is no proof as to why $10,000 was subtracted rather than $8,000, which was the amount agreed upon in the September 17, 1957 agreement. Perhaps at this time it was thought that Schoenhart would pay $10,000.↩
3. Petitioner contends that the deduction should be allowed either as a loss incurred in his trade or business under section 165 of the Internal Revenue Code of 1954 or as a bad debt under section 166. Respondent insists that any deduction is governed exclusively by section 166. Cf. Spring City Co. v. Commissioner, 292 U.S. 182↩ (1934).
4. Schoenhart's son (respondent's witness) testified that Schoenhart's interest was worth $30,000 to $40,000 based in part on alleged value of intangibles. But he was obviously not an unprejudiced witness and his qualifications as a valuation expert left a great deal to be desired. Accordingly, we did not accord any weight to his testimony.↩
*. By official Tax Court Order dated August 11, 1966 and signed by Judge Tannenwald↩, the word "any" was substituted for the word "no." 5. Since the settlement was not made until 1957, it is also open to question whether, even if there were a loss, 1956 was the correct year.↩